THE STATE OF OHIO, APPELLEE, *v.* WOODS ET AL., APPELLANTS.

(Nos. 43358 and 44286—Decided March 5, 1982.)

*Mr. John T. Corrigan,* prosecuting attorney, for appellee.

*Ms. Marillyn Fagan Damelio* and *Mr. Paul Mancino, Jr.,* for appellants.

MARKUS, J. Defendants seek reversal of their respective convictions in a joint jury trial of three counts of carrying concealed weapons and one count of receiving stolen property. We find that the three counts of carrying concealed weapons constitute a single offense for each defendant. Otherwise, we find no error. Defendants each assign the same ten claimed errors.

"I. The defendant was denied his constitutional rights when the court refused to suppress evidence obtained as a result of an illegal search and seizure."

Defendants contend police officers illegally seized the evidence used against them. Testimony presented at the suppression hearing shows the police department received a telephone call from a man who refused to identify himself, but who reported that two men responsible for multiple robberies in the area of the Belmont and Midtown Hotels could be found

near those hotels.[1] The informant said the men were operating a car owned by Curtis Melton, also known as Curtis Blassingame. The caller described the car, the men, and their clothing; he said one man's first name was Dennis and the other man's name was Crim. He added that he knew another man named Joe King would soon receive a drug shipment.

The information received from the anonymous caller was given to Detective Bakker, who knew Blassingame and recognized the accuracy of the caller's description of Blassingame's Cadillac. Bakker also knew there had been several recent robberies at or near the named hotel, and had independent information that the informant's information about the drug shipment to Joe King was correct. Bakker testified that Joe King was a known associate of Blassingame, and that King was known to be a part owner and manager of the Midtown Hotel.

Bakker and his partner, Detective Meyke, drove to the Belmont Hotel where they saw Blassingame's Cadillac parked on the street. The officers watched the Cadillac from their unmarked car in a nearby parking lot. Within fifteen minutes two males and two females entered Blassingame's Cadillac and drove away. The driver was later identified as Dennis Woods, and the front seat passenger was later identified as Royce Crim.

Because the men fit the informant's descriptions, the officers radioed for assistance and followed the Cadillac. They turned on their police siren and bright lights, and shined a red spotlight into the Cadillac's rear window. The Cadillac did not stop. As it proceeded at approximately twenty m.p.h., the officers saw Woods and Crim moving in the front seat "as if somebody was handing something to somebody." They saw Crim reach back

and hand shiny objects to the two women in the back seat, who in turn bent down "as if to secrete something underneath the seats of the vehicle." The officers testified they believed the suspects were hiding guns under the car seats.

Defendant Woods then stopped the Cadillac and got out. While Bakker began to search him for weapons, Meyke saw one of the women in the back seat duck towards the back of the driver's seat with something shiny in her hand. Meyke told Bakker he thought one of the suspects had a gun and ordered the woman not to move. A back-up police unit arrived, and all four suspects were searched for weapons. The officers then searched the Cadillac and found three loaded revolvers under the driver's seat.

To satisfy Fourth Amendment requirements the state must demonstrate that the officers stopped defendants without violating their reasonable expectations of privacy. Detentions which are less intrusive than a traditional arrest are justifiable when the public interest outweighs "the individual's right to personal security free from arbitrary interference by law officers." See *Pennsylvania* v. *Mimms* (1977), 434 U.S. 106, at 109; *United States* v. *Brignoni-Ponce* (1975), 422 U.S. 873, at 878; *Brown* v. *Texas* (1979), 443 U.S. 47, at 50. In that situation, the state must show that the officers were aware of specific, articulable facts from which they had a reasonable basis to suspect that defendants were involved in criminal activity or that they were armed and dangerous. *Sibron* v. *New York* (1968), 392 U.S. 40; *Terry* v. *Ohio* (1968), 392 U.S. 1 [44 O.O.2d 383]; *Brown* v. *Texas, supra.*

When the police stopped the Cadillac, their suspicion that defendants were armed and involved in criminal activity was based on the informant's information, and their own observations that the car did not stop when the siren sounded until shiny objects were being passed to

---

[1] The named hotels are approximately two blocks apart on the same street.

the rear seat and apparently hidden there. Information from a reliable informant that an individual is armed may be sufficient to justify a stop and limited search, without further grounds to suspect danger. *Adams* v. *Williams* (1972), 407 U.S. 143. Defendants argue there was no reason to consider the anonymous caller reliable, contending that an informant's information will not suffice to authorize a search warrant unless he is shown to have some basis for his reported knowledge and the officer has good reason to believe the informant is credible. *Aguilar* v. *Texas* (1964), 378 U.S. 108.

However, in this case, the officers had substantial independent information to corroborate the informant's report and demonstrate its reliability. Although they did not need probable cause for an arrest when they conducted this stop and limited search, the information received may well have provided probable cause. Thus, in *State* v. *Heston* (1972), 29 Ohio St. 2d 152 [58 O.O.2d 349], paragraph one of the syllabus, the court stated:

"An unidentified informer's tip that a defendant has committed a felony, which is corroborated by evidence uncovered by independent police work verifying in detail the information supplied by the informer and makes apparent its trustworthiness, is sufficient to establish probable cause for an arrest."

See, also, *State* v. *Wayne* (May 31, 1979), Cuyahoga App. No. 38912, unreported; *State* v. *Stevens* (June 16, 1977), Cuyahoga App. No. 35720, unreported. Cf. *Draper* v. *United States* (1959), 358 U.S. 307 (informant was previously reliable); *State* v. *Lockett* (July 31, 1980), Cuyahoga App. No. 40284, unreported (informant was previously reliable).

In *State* v. *Stevens, supra,* the police received an anonymous tip describing a man and woman who would arrive on a Greyhound bus from Youngstown with two and one-half ounces of heroin and a gun. This court held the police had justifiable cause to search the suspects when they met the Youngstown bus and observed a man and woman fitting the description given by the informant. The tip coupled with the corroborating evidence was sufficient.

In the present case the police officers' personal observations corroborated the anonymous caller's description of the suspects, their location, and the car in which they were riding. Independent police investigation also confirmed the informant's report of an illicit drug delivery. In all these circumstances, the officers had reasonable grounds to believe the remaining unverified information that defendants were armed and had committed several robberies. See *State* v. *Wayne, supra.* Therefore, the officers were legally justified in stopping the Cadillac for further investigation.

Once they had stopped the car, they were authorized to direct that the passengers exit. *Pennsylvania* v. *Mimms, supra; State* v. *Darrington* (1978), 54 Ohio St. 2d 321 [8 O.O.3d 318]. For their own protection, they were justified in making a limited search for weapons. They had information from the anonymous tip that defendants were armed, and they saw defendants making gestures which led them to believe defendants were hiding their weapons under the seats of the car. *State* v. *Smith* (1978), 56 Ohio St. 2d 405 [10 O.O.3d 515]; *State* v. *Kessler* (1978), 53 Ohio St. 2d 204 [7 O.O.3d 375]; *State* v. *Attaway* (July 7, 1977), Cuyahoga App. No. 37202, unreported; *State* v. *Hudson* (May 8, 1980), Cuyahoga App. No. 41339, unreported.

Defendants' first assignment of error is overruled.

"II. The defendant was denied due process of law and subjected to multiple punishments when he was sentenced to consecutive terms of imprisonment for each of the three guns for which he was found guilty."

Each defendant urges he should not have three convictions and three consecutive sentences for carrying concealed

weapons,[2] since the three weapons were found in the same place at the same time.

The constitutional prohibition against double jeopardy protects defendants from multiple prosecutions for the same offense. *State* v. *Trocodaro* (1973), 40 Ohio App. 2d 50, 53 [69 O.O.2d 28]. However, the Double Jeopardy Clause does not prevent a defendant from being convicted for separate offenses which arise out of the same act or transaction. *State* v. *Strozier* (1972), 32 Ohio St. 2d 62 [61 O.O.2d 303]. The authority to define offenses rests with the legislature. *State* v. *Healy* (1951), 156 Ohio St. 229, 239-240 [46 O.O. 110]. In *United States* v. *Dean* (C.A. 8, 1981), 647 F. 2d 779, the court discussed the subject at page 789:

"We are mindful of the Supreme Court's admonition that, 'The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal and spatial units.' *Brown* v. *Ohio, supra,* 432 U.S. at 169, 97 S.Ct. at 2227. But the Supreme Court has never held that principle to preclude multiple charges for each distinct offense made criminal by the legislature, and this court has rejected a rule that would bar multiple prosecutions for distinct offenses simply because of their proximity or similarity. *See, e.g., Moton* v. *Swenson,* 488 F.2d 1060 (8th Cir. 1973), *cert. denied,* 417 U.S. 957, 94 S.Ct. 3086, 41 L.Ed.2d 675 (1974); *United States* v. *Bandy,* 421 F.2d 646 (8th Cir. 1970)."

Therefore, we must determine whether the legislature intended that carrying multiple concealed weapons constitutes a single offense or multiple offenses. Ohio law requires that criminal statutes must be construed strictly against the state and liberally in favor of the accused. R.C. 2901.04(A); *State* v. *Merriweather* (1980), 64 Ohio St. 2d 57 [18 O.O.3d 259]. A similar principle was adopted for ambiguous federal statutes in *Bell* v. *United States* (1955), 349 U.S. 81, at 84:

"* * * [I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses * * *."

*Bell* held that Congressional legislative intent in the Mann Act, which prohibits interstate transportation of "any woman or girl" for immoral purposes, defines the allowable unit of prosecution ambiguously. Consequently, interstate transportation of two women for immoral purposes was found to constitute only one offense.

In *United States* v. *Kinsley* (C.A. 8, 1975), 518 F. 2d 665, the court reviewed numerous decisions that treated multiple conduct as a single offense when the statute prefaced the culpable act with the word "any."[3] The *Kinsley* opinion observed that "any" may be said "to fully encompass (*i.e.,* not necessarily exclude any part of) plural activity, and thus fails to unambiguously define the unit of prosecution in singular terms." 518 F. 2d at 667.

---

[2] R.C. 2923.12 provides in part:

"(A) No person shall knowingly carry or have, concealed on his person or concealed ready at hand, any deadly weapon or dangerous ordnance."

[3] Some of those federal statutes defined criminal conduct in the following terms:

"Whoever shall forcibly * * * interfere with any person * * *"; whoever knowingly transports "any woman or girl"; "[w]hoever * * * harbors * * * any prisoner * * *"; "any narcotic drug"; "any of the aforesaid drugs"; "whoever * * * destroys * * * any national-defense material * * *"; "any narcotic drug"; * * *. But, see, *Ebeling* v. *Morgan* (1915), 237 U.S. 625 ("[w]hoever shall tear * * * any mail bag * * *"; held, tearing of each mail bag a separate offense).

Federal statutes[4] which prohibit the receipt or possession of "any" firearm have generally been construed to require separate receipt or separate possession of multiple firearms before multiple convictions are permitted. *United States* v. *McCrary* (C.A. 5, 1981), 643 F. 2d 323; *United States* v. *Mason* (C.A. 4, 1979), 611 F. 2d 49; *United States* v. *Killebrew* (C.A. 6, 1977), 560 F. 2d 729; *United States* v. *Kinsley, supra*; *McFarland* v. *Pickett* (C.A. 7, 1972), 469 F. 2d 1277. Under those federal statutes, simultaneous, undifferentiated possession of multiple firearms constitutes only one offense. *United States* v. *Hodges* (C.A. 5, 1980), 628 F. 2d 350.

R.C. 2923.12 prohibits concealment of "any deadly weapon or dangerous ordnance." Neither the statute nor the legislative Committee Comment assists in determining whether simultaneous, undifferentiated possession of multiple weapons constitutes multiple offenses or a single offense. The ambiguity created by the use of the word "any" is compounded by the language in the statute and the Committee Comment which sometimes refers to "the weapon" (singular), yet labels the offense "carrying concealed weapons" (plural). Since ambiguity must be resolved in favor of the accused, we hold that simultaneous, undifferentiated possession of multiple firearms in violation of R.C. 2923.12(A) constitutes a single offense.

From another viewpoint, division of singular conduct into multiple offenses is prohibited by R.C. 2941.25(A).[5] Thus, in *State* v. *Fischer* (1977), 52 Ohio App. 2d 53 [6 O.O.3d 40], the defendant was convicted for theft of a pickup truck and for theft of automotive tools in the pickup truck when it was stolen. The Clermont County Court of Appeals held at 55:

"[I]t was error to convict and sentence Fischer on both of the indictments. R.C. 2941.25(A). The initial theft of the pickup truck was also a theft of everything that was in it at that time; therefore, in the terms of the statute, 'the same conduct by defendant can be construed to constitute two or more allied offenses of similar import.' This defendant can be convicted of only one offense."

See, also, *State* v. *Fisher* (1977), 52 Ohio App. 2d 133 [6 O.O.3d 99] (unlawful taking of several different species of fish, at one time, in one location, and in one net, present "allied offenses of similar import" for which only one conviction can result).

When a defendant conceals several weapons in one location at one time, his conduct is essentially one continuous, indivisible act, such as those described in *State* v. *Fischer, supra*, and *State* v. *Fisher, supra*. Therefore, defendants' convictions for three separate counts of carrying concealed weapons conflicts with the provisions of R.C. 2941.25(A). Cf. *State* v. *Sanders* (1978), 59 Ohio App. 2d 187 [13 O.O.3d 209]; *State* v. *Cartellone* (1981), 3 Ohio App. 3d 145.

For the foregoing reasons, defendants' convictions and sentences on three counts of carrying concealed weapons must be merged into a single offense for each defendant, and the sentences must be modified accordingly.

"III. The court committed prejudicial error in not dismissing the indictment as the defendant had been denied his statutory right to a speedy trial."

R.C. 2945.71(C)(2) required that defendants be brought to trial within two

---

[4] Section 922(h)(1), Title 18, U.S. Code and Section 1202(a)(1), Title 18, U.S. Code App.

[5] R.C. 2941.25(A) provides:

"Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

hundred seventy days of their arrest on December 14, 1979. However, defendants signed written waivers of their statutory speedy trial rights sixty-two days after their arrest. The waiver form expressly states that defendants consented to have their case continued "even if it has to be continued indefinitely." While a waiver may be ineffective for an unreasonable delay, there is no showing here that the delay was unreasonable.

A defendant is not entitled to be discharged under R.C. 2945.73(B) if he waived his statutory right to a speedy trial before the statutory period expired. *Westlake* v. *Cougill* (1978), 56 Ohio St. 2d 230 [10 O.O.3d 382]; *State* v. *Kidd* (1978), 60 Ohio App. 2d 374 [14 O.O.3d 326]; *State* v. *Powe* (April 13, 1978), Cuyahoga App. No. 37289, unreported; *State* v. *Powe* (March 30, 1978), Cuyahoga App. No. 37290, unreported; *State* v. *Long* (Feb. 26, 1976), Cuyahoga App. No. 34425, unreported.

Defendants' third assignment of error is overruled.

"IV. The court committed prejudicial error in conducting various proceedings during the course of the trial without the presence of the defendant."

Crim. R. 43(A) states in part:

"The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict."

Defendants first contend this rule was violated by the court's *in camera* inspection of a witness' statement to determine possible inconsistency with his direct testimony. Crim. R. 16(B)(1)(g) provides that a trial court shall conduct such an inspection on request "with the defense attorney and prosecuting attorney present and participating." We conclude that the defendant has no right to participate when he is represented by counsel.

In *State* v. *Williams* (1969), 19 Ohio App. 2d 234 [48 O.O.2d 364], the Trumbull County Court of Appeals stated at page 241:

"It has frequently been held that a defendant's right to be present at his trial depends upon whether the proceedings involve questions of law only or proceedings in which testimony of witnesses is received. Courts generally hold that defendant's presence is required when testimony of witnesses is received, but under certain circumstances when matters of law are being argued before the court, such as preliminary pre-trial motions which do not affect substantial rights of the defendant, defendant's presence is not required."

In *Williams,* the court upheld defendant's right to be present at a suppression hearing where witness testimony was received. Similarly, in *State* v. *Howard* (1978), 57 Ohio App. 2d 1 [11 O.O.3d 3], the Hamilton County Court of Appeals confirmed defendant's right to be present for testimony at a voir dire hearing on the admissibility of "other acts" evidence under R.C. 2945.59. The court stated at page 5:

"We find it conceivable that in many situations a defendant's presence at such a hearing could result in his giving defense counsel information that could lead to the exclusion of such potentially damaging evidence from consideration by the triers of the fact; thus, his presence does bear a reasonably substantial relation to defend in these instances."

A defendant cannot be excluded from testimonial proceedings where his knowledge might assist his counsel. He is not prejudiced by his absence from discussions about legal issues, such as side-bar arguments about evidentiary objections. His counsel's involvement in reviewing a witness statement satisfies defendant's rights, since defendant cannot supply any information that aids his counsel in deter-

mining whether the statement conflicts with the witness' direct testimony.

Moreover, no objections were made at trial to defendant's absence from the *in camera* hearing. An explicit waiver of presence is not necessary where there was an opportunity to object but no objection was made. *State* v. *Zagger* (Aug. 13, 1981), Cuyahoga App. No. 42540, unreported. Since the record does not indicate defendants even requested to be present at the *in camera* inspection, any such right defendants may have had was effectively waived.

Defendant Woods also contends his right to be present was violated when he left the courtroom because his wife had been in an automobile accident. The trial court's journal entry reflects the course of events:

"Prior to the Jury being called, Defendant Woods informed the Court at 11:30 a.m. that his wife was in an accident and asked for a recess. Defendant Woods and his Attorney were told to return at 1:30 p.m. for Trial. At 2:35 p.m. defendant Woods had not returned although his Attorney was present. The Court nor his Attorney had heard from defendant Woods.

"Jury was called.

"On Trial.

"At 3:35 p.m. the Court read a message that defendant Woods' Sister-in-Law called. Defendant Woods' Attorney Taylor asked for a continuance until November 25, 1980. The Court granted continuance over objection of the State."

The trial court is authorized to continue trial proceedings without the defendant's presence if his absence is voluntary. Crim. R. 43(A); *State* v. *Wolford* (Dec. 21, 1978), Cuyahoga App. No. 38110, unreported; *State* v. *Copley* (July 20, 1978), Cuyahoga App. No. 37473, unreported. See, also, *State* v. *Phillips* (1972), 34 Ohio App. 2d 217 [63 O.O.2d 397]. When Woods did not return after the recess and failed to telephone the court or his attorney to explain his absence, he voluntarily absented himself from the trial.

Defendants' fourth assignment of error is overruled.

"V. The defendant was denied a fair trial by reason of improper argument on behalf of the prosecuting attorney."

Improper closing argument requires reversal when the argument viewed in its entirety denies defendant a fair trial. *State* v. *Watson* (1969), 20 Ohio App. 2d 115 [49 O.O.2d 152], modified on other grounds, 28 Ohio St. 2d 15 [57 O.O.2d 95]; *State* v. *Brown* (Nov. 12, 1981), Cuyahoga App. No. 43427, unreported. We find that the prosecutor's remarks here did not deny these defendants a fair trial.

Defendants first object to the prosecutor's comment on defendants' failure to call Curtis Melton as a witness since they contended their arrest had been set up by Melton. However, the prosecutor may properly comment on a defendant's failure to subpoena witnesses to support his case. See *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 86 [3 O.O.3d 45]; *State* v. *Broadus* (Dec. 10, 1981), Cuyahoga App. No. 43554, unreported; *State* v. *Muscatello* (March 13, 1980), Cuyahoga App. No. 40484, unreported; *State* v. *Wilkerson* (June 2, 1977), Cuyahoga App. No. 36227, unreported; *State* v. *Boigner* (March 25, 1976), Cuyahoga App. No. 34514, unreported.

Defendants claim they were denied a fair trial when the prosecutor twice misstated the evidence. The prosecutor incorrectly asserted that evidence showed defendants may have been involved in a homicide; he later misquoted police testimony, saying that pills were found in the back seat of the police car which transported defendants. Defense objections to those two misstatements were promptly sustained by the court. Both the trial court and the prosecutor cautioned the jury that closing arguments are not evidence, and the court's jury instructions directed jurors to disregard matters to which objections were sustained. These

isolated misstatements of the evidence did not constitute reversible error. See *State* v. *Smith* (April 24, 1980), Cuyahoga App. No. 41340, unreported; *State* v. *Bryant* (Jan. 12, 1978), Cuyahoga App. No. 36786, unreported.

Defendants' fifth assignment of error is overruled.

"VI. The defendant was improperly convicted of felony offenses as the jury did not specify an aggravating circumstance in its verdict."

The offense of receiving stolen property under R.C. 2913.51 is a misdemeanor unless one of the aggravating circumstances listed under R.C. 2913.71 is present. The offense of carrying concealed weapons is a misdemeanor unless one of the aggravating circumstances under R.C. 2923.12(D) is present. R.C. 2945.75 states:

"(A) When the presence of one or more additional elements makes an offense one of more serious degree:

"* * *

"(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

The verdict forms submitted to the jury did not specify the degree of the offenses of which defendants were found guilty, nor do they specify that any aggravating circumstances existed. However, the verdict forms refer to the offenses *as charged in the indictment.*[6] The indictments expressly state aggravating circumstances for each offense with which defendants were charged. In the receiving stolen property charges, the indictments state that the stolen property

involved was a gun. See R.C. 2913.71(C). In the carrying concealed weapons charges, the indictments state that defendants had a loaded gun. See R.C. 2923.12(D).

Defense counsel relies on the decision in *State* v. *Griffin* (Nov. 4, 1980), Franklin App. No. 80AP-311, unreported. In *Griffin,* the state argued that the verdict's failure to comply with R.C. 2945.75(A)(2) was cured because the verdict form referred to the offense "as * * * charged in the indictment." The court rejected that argument because the jury did not have a copy of the indictment, and the trial court did not instruct the jury on the charges as set forth in the indictment.

We do not find *State* v. *Griffin, supra,* applicable here because the indictments were read to this jury and the language of the indictments was included in this charge to the jury. The failure of the verdict forms to comply strictly with R.C. 2945.75(A)(2) does not constitute reversible error, when the verdicts incorporate the language of the indictments, the evidence overwhelmingly shows the presence of the aggravating circumstances, and defendants never objected at trial to the form of the verdicts. See *State* v. *Corkran* (1965), 3 Ohio St. 2d 125 [32 O.O.2d 132], paragraph two of the syllabus; *State* v. *Ridgeway* (1972), 35 Ohio App. 2d 254 [64 O.O.2d 381].

The sixth assignment of error is overruled.

"VII. The judgments of conviction are contrary to law as they were based upon uncorroborated testimony of an accomplice."

Defendants argue that they were convicted on the uncorroborated testimony of co-defendant Valerie Hines. She had been indicted on the same charges with defen-

---

[6] For example, the "receiving stolen property" verdict form states:

"We, the Jury in this case being duly impaneled and sworn, do find the defendant, DENNIS WOODS, (*)_____ of Receiving Stolen Property, a violation of R.C. 2913.51, *as charged in the Second Count of the Indictment.*" (Emphasis added.)

dants and had pleaded guilty to one count of carrying concealed weapons. R.C. 2923.03(D) provides:

. "No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence."

Although the statute refers only to complicity offenses, it applies equally to principal offenses. *State* v. *Pearson* (1980), 62 Ohio St. 2d 291 [16 O.O.3d 332], paragraph one of the syllabus. In *Pearson,* the court stated in the second paragraph of the syllabus:

"In order for the prosecution to satisfy the corroboration requirement of R.C. 2923.03(D), independent evidence must support an accomplice's testimony, and must tend to connect the accused with the alleged crime or must tend to identify the accused as a guilty actor. (*State* v. *Myers,* 53 Ohio St. 2d 74 [7 O.O.3d 150], approved and followed.)"

Hines testified that on the night she and defendants were arrested she was with defendants at a restaurant. Defendant Woods told her that police officers were outside, and he put his gun in her purse. Shortly thereafter, Hines and defendants left the restaurant and began driving in Curtis Blassingame's Cadillac. As they proceeded while being pursued by police officers, defendant Crim took two guns from his pants and handed them to Hines in the back seat. Hines kicked the guns under the seat.

Hines' testimony is more than adequately corroborated by the testimony of Detectives Bakker and Meyke. They testified that they followed the car in which defendants and Hines were riding, they saw defendants moving around in the front seat, and they saw Crim reach over the back of his seat and give shiny objects to the women in the back seat.

This testimony supports the accomplice's testimony, connects defendants with the crime, and identifies defendants as the guilty actors. Hence, defen-

dants were not convicted on the uncorroborated testimony of an accomplice.

The seventh assignment of error is overruled.

"VIII. The judgments of conviction as to the carrying concealed weapons offenses are improper and in violation of the constitutional rights of the defendant."

Defendants allege that their convictions for carrying concealed weapons should be reversed because there was insufficient evidence to prove they carried or were in possession of the guns. The testimony of Valerie Hines, which was corroborated by the testimony of Detectives Bakker and Meyke, shows that defendants were carrying weapons on their persons. When defendants were in a car being pursued by the police officers, they concealed their weapons under the seats of the car with the help of Hines and another passenger.

Even when the weapons were under the seats of the car, they were "concealed ready at hand" in violation of the statute. R.C. 2923.12(A); see *State* v. *Jones* (April 3, 1980), Cuyahoga App. No. 39924, unreported. Therefore, defendants' convictions for carrying concealed weapons are supported by sufficient evidence.

The eighth assignment of error is overruled.

"IX. The judgment of conviction for the offense of receiving stolen property is contrary to law and contrary to the evidence and the court should have granted a motion for dismissal or discharge."

Defendants contend their convictions for receiving stolen property are not supported by sufficient evidence to show that defendants knew or had reasonable cause to believe the gun had been stolen. In *State* v. *McAllister* (1977), 53 Ohio App. 2d 176 [7 O.O.3d 247], this court stated at pages 180-181:

"It has long been established in Ohio that the unexplained possession by a defendant of recently stolen property may give rise to a permissive inference from

which a jury may conclude, beyond a reasonable doubt, that the accused is guilty of the theft. *Methard* v. *State* (1869), 19 Ohio St. 363; *State* v. *Brennan* (1949), 85 Ohio App. 175 [40 O.O. 124]; *Cofield* v. *State* (1933), 14 Ohio Law Abs. 29. Cf. *State* v. *Arthur* (1975), 42 Ohio St. 2d 67 [71 O.O.2d 42]. Substantially similar inferences have long been a part of our legal heritage. See, *Barnes* v. *United States* (1973), 412 U.S. 837."

Defendants argue the inference of guilty knowledge is not applicable in this case because the gun was stolen five months before defendants' arrest, so it was not "recently stolen." The trial court did not instruct the jury on the inference from possession of recently stolen property. The jury instructions simply told them that they had to find beyond a reasonable doubt that "defendants knew or had reasonable cause to believe that the property was obtained through the commission of a theft offense," in order to find defendants guilty of receiving stolen property.

The jury apparently drew the inference of guilty knowledge on their own from defendants' efforts to conceal it and the relative recency of the theft. The fact that the gun had been stolen five months before defendants' arrest did not make that inference improper. See *Altom* v. *United States* (C.A. 7, 1972), 454 F.2d 289, certiorari denied, 406 U.S. 917 (electric generators stolen fifteen months before defendants' arrest); *United States* v. *Coppola* (C.A. 2, 1970), 424 F.2d 991, certiorari denied, 399 U.S. 928 (bonds stolen three to five months before defendants' arrest); *Lee* v. *United States* (C.A. 8, 1966), 363 F.2d 469, certiorari denied, 385 U.S. 947 (securities stolen five months before defendants' arrest). Accordingly, we find that the convictions for receiving stolen property are supported by sufficient evidence.

Defendants' ninth assignment of error is overruled.

"X. The defendant was subjected to a cruel and unusual punishment when he was sentenced consecutively as to several counts of the indictment."

Finally, defendants claim the trial court's imposition of consecutive sentences for two of the carrying concealed weapons charges constitutes cruel and unusual punishment. Although this contention is rendered moot by our ruling on the second assignment of error, we find it to be totally without merit.

Defendants suggest that the trial court improperly imposed consecutive sentences as retribution because defendants insisted on going to trial instead of entering a plea, relying on *Columbus* v. *Bee* (1979), 67 Ohio App. 2d 65 [21 O.O.3d 41]. However, defendants fail to point out, and we are unable to find, any evidence in the record which shows that the trial court imposed a harsher sentence because defendants insisted on a trial.

The determination of whether consecutive sentences are imposed is within the sound discretion of the trial court. *State* v. *Johnson* (1978), 57 Ohio App. 2d 263 [11 O.O.3d 338]. We find no abuse by the trial court in sentencing defendants to consecutive terms.

The tenth assignment of error is overruled.

As explained in our discussion of defendants' second assignment of error, the three convictions for carrying concealed weapons must be merged into one conviction, and the sentences for those three offenses must be merged into the sentence for the second count of the indictment. As so modified, the judgment below is affirmed.

*Judgment affirmed, as modified.*

DAY, P.J., and CORRIGAN, J., concur.