THE STATE OF OHIO, APPELLEE, *v.* COFFMAN, APPELLANT.

(No. 83AP-781—Decided February 23, 1984.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Karen L. Martin,* for appellee.

*Mr. James Kura,* county public defender, and *Ms. Barbara J. Slutsky,* for appellant.

McCORMAC, P.J. Defendant-appellant, William B. Coffman, appeals his conviction by a jury of two counts of theft and his sentence of one and one-half years concurrently for each conviction on the basis that each conviction constituted a fourth degree felony. This appeal is based on the following five assignments of error:

"1. Changes in the theft statute effective after appellant's arrest but before he was tried and sentenced entitled him to be sentenced as for a misdemeanor.

"2. The trial court erred in allowing appellant's convictions for two counts of theft to stand because they are

allied offenses of similar import pursuant to O.R.C. Section 2941.24 [sic], and contrary to the constitutional guarantees against double jeopardy contained in the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of Ohio.

"3. Appellant was denied due process of law by the failure of the state to disclose evidence to the defense as provided for by the Criminal Rules of Procedure, Rule 16.

"4. An accused's Fourteenth Amendment right to due process of law is violated where the trial court refuses to instruct the jury pursuant to a request for special instruction [where the request] is appropriate and necessary and where the substance of the requested instruction is not included in the general charge.

"5. The trial court erred under the totality of the circumstances in its instructions on the essential elements included within the theft statute and erred in referring to punishment in its instruction. This deprived appellant of a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution."

Beulah Key and her mother, Rose Brown, drove to the Elaine Powers Health Spa, located in Great Eastern Shopping Center, in a gray Ford station wagon belonging to Ms. Brown. The car was locked and parked close to the spa and both women left their purses on the floor in front of the passenger seat concealed under a blanket. Approximately one hour after they entered the spa, the women were notified by police that someone had broken into the car. When they went out to examine the car, they noticed a scratch on the upper part of the front passenger window. Ms. Key testified that slightly over $200 had been taken from her purse. She stated that the bills were contained in a Huntington National Bank ("Huntington") envelope, and included two $50 bills, five $20 bills, and a couple of $1 bills. Ms. Brown testified that she also was missing money totaling $137 that she had kept in a Huntington bank envelope.

Carl Cervalini testified that he was the owner of the A & B Company, a store located in the Great Eastern Shopping Center. At the time of the robbery, he was waiting on a customer when he noticed a man walking between cars in the lot, looking inside them, and trying to open doors. The man then returned to his own car, which Cervalini testified was a brown Oldsmobile, and drove it down the aisleway in the lot and parked it. Cervalini watched the man get out of his car and approach a gray Ford station wagon. He entered that car, removed something, and returned to his own car. Next, he returned to the station wagon, put something back in it, and again returned to his car. At this point, Cervalini walked out to his own car in order to record the license number on the brown Oldsmobile. He gave the police the license number and a description of the man. He stated that the man was black and wore a light-colored hat. He also turned over to the police a Huntington bank envelope he picked up in the lot after watching the man throw it out his car window as he pulled out of his parking space.

Officer Joseph Huntzinger testified that he was sent to the Great Eastern Shopping Center shortly thereafter with a description of a car and its license number. He spotted the car, a brown Oldsmobile, leaving the lot and pulled it over. He found the driver to be black and wearing a light gray hat. He noticed coins scattered on the floor of the car and a $5 bill in the ashtray. After putting the driver under arrest, Officer Huntzinger asked him to empty his pockets. The man removed two envelopes of money, totaling $316, from his left rear pocket. He told the officer he

got the money after cashing his wife's check.

Vicki Bando, records' keeper for the Huntington bank, stated that a check of their records showed no account in defendant's name. She added that she was not requested to check under any other names.

The parties stipulated that defendant had a prior conviction for robbery on March 5, 1979. The jury was instructed and returned guilty verdicts on both theft counts, from which defendant now appeals.

For his first assignment of error, defendant states that changes in the theft statute (R.C. 2913.02), prior to his conviction and sentence, require that he be sentenced for a misdemeanor only. The state has conceded that defendant should be resentenced under the circumstances presented herein.

When defendant was arrested, former R.C. 2913.02 was in effect. As pertinent, it provided that, if the property taken was less than $150 in value, the defendant would be guilty of petty theft, a first degree misdemeanor. Theft of property equal to or exceeding $150 in value, or theft where a defendant has been convicted of a theft offense on a prior occasion, was grand theft, a fourth degree felony. R.C. 2913.02(B). The amended version of R.C. 2913.02(B) now states that theft of property less than $300 in value constitutes petty theft, while theft of property between $300 and $5,000, or theft where the offender has previously been convicted of a theft offense constitutes theft, a felony of the fourth degree. Thus, the dividing line between petty theft and felony theft has been raised, thereby reducing the punishment for this offense if it is not a second theft conviction. As noted in R.C. 1.58(B):

"If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

The amended version of R.C. 2913.02 became effective before defendant's sentencing on July 20, 1983. Thus, defendant should have been sentenced in accordance with the amended version of R.C. 2913.02. However, it does not necessarily follow that defendant should have been sentenced for a misdemeanor. Although his convictions on both counts each involved theft of a sum of money under $300, defendant admitted and the parties stipulated at trial that he had previously been convicted of robbery, a theft offense, in March 1979, which was charged as to count two but not count one (probably because the value was over $150 which was then sufficient in itself to make the crime a felony). Therefore, following the amended provisions of R.C. 2913.02(B), he was properly sentenced for theft as a fourth degree felony on count two (based upon the prior theft conviction) and a misdemeanor only for count one (since a prior theft conviction was not charged in the indictment for this count).

The first assignment of error is sustained in part and overruled in part.

For his second assignment of error, defendant contends that the court erred in sentencing him for two separate theft offenses, in that they were allied offenses of similar import and should have merged under R.C. 2941.25(A). That argument is well-taken and the assignment of error is sustained. Although money was taken from two individuals and from two separate purses, the thefts, in reality, constituted a single act with a singular intent because the monies were taken at the same time and from the same location in a continuous act. *State* v. *Woods* (1982), 8 Ohio App. 3d 56, at 60. The state's argument that defendant had to be aware he was stealing from two people because there were two purses in the car, and that, there-

fore, there was a separate animus as to each theft, lacks legal support. The crime was stealing property from an unattended car. Multiple ownership of the property does not provide the basis for more than one animus, nor does the taking of multiple items of property. See *State* v. *Fisher* (1977), 52 Ohio App. 2d 133, paragraph one of the syllabus, which provides as follows:

"Where a defendant is charged in separate complaints with taking several different species of fish, contrary to law, and the taking was at the same time, at the same location and in one net, the conduct of the accused constituted 'two or more allied offenses of similar import,' within the meaning of R.C. 2941.25(A), and he may be convicted on only one complaint."

*Fisher,* like this case, consisted of one continuous act of theft involving several objects. Like this defendant, the defendant in *Fisher* committed the theft of several fish at the same location and time; the taking could not be divided into separate acts even though it involved multiple objects. In the instant case, the defendant committed one act of theft involving two objects. Therefore, following R.C. 2941.25(A), he should only have been sentenced for one count.

The second assignment of error is sustained. The trial court is instructed to delete the concurrent sentence for count one.

Defendant's third assignment of error is that the state's failure to provide physical evidence in discovery, as required by Crim. R. 16, violated his due process rights. At trial, defense counsel objected to the introduction of Huntington bank envelopes found by Cervalini at the scene because he had not been shown this evidence during the discovery process. The trial court admitted the evidence over objection. The court did not err in admitting this evidence, and defendant has failed to show any prejudicial effect. Defense

counsel became aware of this evidence before the records' keeper from Huntington testified and had ample opportunity during cross-examination of that witness to pursue whether the envelopes could have belonged to defendant's wife, as claimed by him. As noted by the state, defense counsel never indicated that there were Huntington bank records beneficial to defendant; also the envelopes did not reveal any link to the victims. Under those circumstances, the trial court did not err in refusing to deny the state an opportunity to use the evidence.

The third assignment of error is overruled.

For his fourth assignment of error, defendant states that the court erred in refusing to give the jury a special instruction timely requested by him concerning eyewitness identification of the defendant. *State* v. *Guster* (1981), 66 Ohio St. 2d 266 [20 O.O.3d 249], holds that this kind of instruction is discretionary with the court and not required where the general instruction adequately covers the requirement that identity be established beyond a reasonable doubt. In the charge, the court gave adequate and repeated instruction on the issue of reasonable doubt as well as the necessity to evaluate witness credibility based on that witness' ability to see, know, and hear the things about which he testified. Taken as a whole, this instruction sufficiently guided the jury with regard to identification of defendant, and further explanation was not needed. Cervalini had ample opportunity to observe the general appearance of defendant, in addition to spotting his car and recording the license number. The police officer was provided these descriptions which enabled him to quickly spot the defendant and stop him. Upon pulling him over, Huntzinger found that he was black and was wearing a light-colored hat, as Cervalini had described. This case does not

present a situation where the identification was inherently unreliable or in need of further, specific instruction, particularly since defendant was not identified by facial features.

The fourth assignment of error is overruled.

Defendant's final assignment of error is that the instructions given on the essential elements of the crime of theft were inadequate, depriving defendant of a fair trial, and that it was error to refer to punishment in the charge. The court made the latter reference only in explaining the jury's function to decide whether or not, as a matter of fact, defendant had been convicted of a prior theft offense. The explanation was vital to the jury in understanding its duties, and did not prejudice defendant in any manner.

Regarding the instructions given on the elements of theft, defendant has failed to demonstrate prejudicial error. While the definitions of knowingly and intent to deprive were rather sparse, they were adequate to convey the ordinary meaning of those terms within the context of the alleged theft offenses, since it was obvious that whoever took the property did so knowingly and with intent to deprive. Defendant has failed to show any abuse of discretion by the court, and, accordingly, the fifth assignment of error is overruled.

Defendant's first assignment of error is sustained in part and overruled in part, and defendant's second assignment of error is sustained. The third, fourth, and fifth assignments of error are overruled. The case is remanded to the trial court to delete the sentence imposed for count one.

*Judgment affirmed in part, reversed in part, and cause remanded.*

NORRIS and BROGAN, JJ., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.