OPINION.
Defendant-appellant Martin Holloman admitted at trial that he was guilty of theft — he contested only the degree of the offense. Because the jury did not find that the value of the merchandise Holloman stole was greater than five hundred dollars, we reverse his conviction for felony theft and remand for the entry of a conviction and sentence for misdemeanor theft.
Holloman stole two purses from a Lazarus store. The incident was viewed and recorded by store security personnel on a closed-circuit security system. When they saw what was occurring, security officers converged on the scene in an attempt to apprehend Holloman, but he had fled by the time that they arrived. They also were unable to recover the purses or the item tags attached to the purses, and no inventory was performed to specifically identify the type or value of the merchandise Holloman had carried off. Holloman inexplicably chose to return to the same Lazarus store just two days later. Security personnel recognized Holloman from his previous escapade and apprehended him.
Holloman admitted that he had stolen the two purses, but demanded a jury trial in which he contested only the value of the merchandise. Holloman had been charged with a felony of the fifth degree, requiring the state to prove beyond a reasonable doubt that the value of the merchandise was at least more than five hundred dollars.[1] But if the purses were worth less than five hundred dollars, then Holloman could only have been convicted of the lesser offense of petty theft, a first-degree misdemeanor.[2] The price at which the purses were offered for sale would have been prima facie evidence of their value,[3] but the state was unable to produce any direct evidence of the sales price.
Lazarus's loss-detention detective testified that he had been operating the closed-circuit television on the night of the theft, had recorded the events on videotape, and had participated in the attempt to apprehend Holloman. He also claimed to have been generally familiar with the value of the merchandise displayed on the glass shelf from which the purses had been removed. According to him, the purses in that area of the store were the most expensive Lazarus offered, and each purse would have sold for two hundred fifty dollars or more.
But, on cross-examination, the detective admitted that no inventory was performed to identify the items specifically, and that while he knew the purses were made by Coach, he could not identify the particular model of Coach purse. He also admitted that the police report taken at the time of the incident did not include the cost of the purses, and that no internal report specified the value of the loss.
Prior to the jury's deliberation, the trial court instructed the jurors on the various points of law that they would need to consider to decide the case. Regarding value, the court told the jury that "[t]he indictment alleges that the total value of the property in question is $500 or greater. This is a question of fact for you to decide." The jury deliberated and returned a written form that succinctly stated only that it had found Holloman guilty "of the offense of Theft, as charged in Count 1 of the Indictment." There was no mention of the value of the merchandise on the verdict form.
Holloman now appeals and raises one assignment of error. He claims that the jury's verdict was insufficient to convict him of felony theft, because the verdict did not state that the jury had found that the value of the purses was in excess of five hundred dollars. We sustain the assignment of error.
To Elevate a Theft Offense, the Jury Must Affirmatively Find Value
Two separate statutory provisions clearly dictate what a jury's verdict must contain in order to properly find a defendant guilty under circumstances such as these. R.C. 2913.61(A) states in pertinent part that when a person is charged with stealing property worth between five hundred and five thousand dollars, "the jury or court trying the accused shall determine the value of the property or services as of the time of the offense and, if a guilty verdict is returned, shall return the finding of value as part of the verdict."
Also, more generally, R.C. 2945.75 (A)(2) requires that, when the presence of an additional element would make an offense more serious, a guilty verdict must state "either the degree of the offense of which the offender [was] found guilty, or that such additional element or elements [were] present." A failure to comply with the specificity required by the statutes should result in a guilty verdict being construed as "a finding of guilty of the least degree of the offense charged,"[4] which, in this case, would be a misdemeanor theft rather than a felony theft.
The state concedes that the jury's verdict did not comport with the statutes. But while admitting that the verdict was deficient, the state proceeds to argue, with some authority, that the verdict was nonetheless within the acceptable limits of "substantial compliance," a judicial doctrine that has expanded over the years, too often becoming an excuse for noncompliance with the law. The statutes here, unlike many others, are clear and subject to no misunderstanding. We hold that this verdict did not "substantially comply" — it did not comply at all — with the statutes.
"Substantial Compliance" Can Rarely Save a Defective Verdict
Historically, Ohio courts have held that when a statute requires a jury to determine and to state in its verdict a value for the object of a theft-related offense, a jury's failure to comply with the statute requires reversal of a conviction. Under this view, the statutes are strictly construed, and deficient verdicts are deemed insufficient to support findings of guilty.[5] The record compels us to adhere to this principle of law.
Although some courts have continued to adhere to this venerable tradition of strict statutory construction,[6] there have been a variety of instances in which courts have applied certain common-sense exceptions based on the unique circumstances of a particular case. For example, when a defendant was convicted of a misdemeanor theft offense that only required the value of the property to have been less than sixty dollars (a former threshold), it made sense to infer that the property had some value, despite the jury's failure to indicate the value on its form.[7] Since the defendant had been charged with the least degree of the offense, there was no prejudicial error in the violation of the statute. Similarly, when a defendant expressly stipulated to the value of the property during trial,[8] or when the defendant pleaded no contest and thus admitted to the value alleged by the state,[9] the failure of the trier of fact to specifically find and state the value of the property was excused. Or when the jury did consider the value of the property, but returned its findings on an incorrect, but related, verdict form, the defendant's conviction was not disturbed.[10]
The origin of the doctrine of substantial compliance and the root of many of the common-sense exceptions to the statutory requirement can be traced to the Ohio Supreme Court. The court hasheld, in 1962, that where (1) the defendant admitted in open court to the value of the property taken, (2) the verdict read that the defendant was guilty as charged in an indictment that specified a value for the object of the theft, and (3) there was no objection to the verdict form before it was submitted to the jury, the defendant received a fair trial and was not prejudiced by the form of the verdict.[11] We believe that the most important point in the 1962 case is that the defendant stipulated value.
Some appellate courts haveEach of these modified these criteria. has since been modified to some extent. For example, there are exceptions to the exception. So when the record does not reflect that the jury had been instructed concerning the contents of an indictment, or did not have the indictment available during its deliberations, a verdict form purporting to find the defendant guilty as charged in the indictment does not "substantially comply" with the statute.[12] Because the far better practice, except perhaps in cases with myriad counts, is not to send the indictment to the jury room — it is not evidence of anything — there should be no exception based on value stated in the indictment.
The first case to expand the Ohio Supreme Court's criteria for substantial compliance did so by requiring, in the absence of an admission by the defendant, that the evidence presented at trial regarding the value of the stolen object be "quite clear."[13] Next, as long as the evidence adduced at trial was "overwhelming," the jury's failure to find the value of the property on the verdict form was held to have been excusable.[14]
We decline to endorse those cases that have expanded the use of substantial compliance so far that it has abrogated the statutes. Courts should maintain the standard originally established by the Ohio Supreme Court. A defendant must have admitted to the value of the stolen property before substantial compliance with R.C. 2913.61(A) may be considered. While the defendant may certainly stipulate value, the verdict form should still require the jury to find the greater offense. After all, value is an element of the crime. Though we see no prejudice to the defendant if the verdict form inadvertently leaves out the value he has stipulated to, we are unwilling to expand the exception further. Courts must conform to what the legislature has enacted, and the statutes involved here could not be more specific in requiring the verdict form to contain a finding on the element of value.
In this case, Holloman contested the value of the merchandise that he admitted to stealing. That was the only reason he took the case to trial. The law specifically required the jury to find value. And providing for the element of value on the jury form is easy to do — it just was not done in this case.
The state also contends that Holloman waived his right to object to the verdict by not objecting to the verdict form. The Tenth Appellate District has had the occasion to consider which side bears the responsibility to object to a verdict form that does not contain the information necessary to support a conviction for an enhanced degree.[15]
In its case, the defendant had a concealed shotgun within reach in his car in violation of R.C. 2923.12(A). The shotgun was not loaded, but, during an inventory search, several rounds of ammunition were discovered in the car's unlocked glove compartment. It was the responsibility of the jury to determine whether the ammunition was "ready at hand," thereby elevating the degree of the offense. The jury failed to make that determination, because, as here, the verdict form did not contain a place where the jury could state the existence of a specific aggravating factor.
We join the Tenth Appellate District in its assessment of who has the burden to object to a verdict form that does not comply with statutory requirements. We agree that when the prosecution seeks a guilty verdict for an offense of a degree higher than that supported by the terms of the verdict form, the prosecution — not the defendant — must call the error to the attention of the trial court.[16] It is not the defendant's responsibility to help the state convict him of the highest possible degree of an offense. By failing to object to the form of the verdict, Holloman did not waive the issue for the purposes of this appeal.
Because there was no finding of value, the jury verdict omitted an essential element of felony theft. Thus, the jury found Holloman guilty of a misdemeanor. The trial court should have so interpreted the verdict form. We thus sustain Holloman's assignment of error, reverse his conviction for felony theft, and remand this case for the trial court to convict and sentence Holloman for misdemeanor theft.
Doan, P.J., and Shannon, J., concur.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has recorded its own entry on the date of the release of this Opinion.
[1] See R.C. 2913.02(B)(2).
[2] See R.C. 2913.02(B)(2).
[3] See R.C. 2913.61(E)(1).
[4] See R.C. 2945.75(A)(2).
[5] See Armstrong v. State (1871), 21 Ohio St. 357, paragraph three of the syllabus; Barton v. State (1849), 18 Ohio 221, 224-225; State v.Collier (1984), 22 Ohio App.3d 25, 28, 488 N.E.2d 887, 891; State v.Sudekatus (1943), 72 Ohio App. 165, 170, 51 N.E.2d 22, 24; State v. Dillan (1936), 23 Ohio Law Abs. 186; Durbin v. State (1926),20 Ohio App. 284, 291, 152 N.E. 194, 196.
[6] See State v. Wright (1993), 91 Ohio App.3d 71, 75, 631 N.E.2d 1066,1068; State v. Alexander (July 2, 1992), Muskingum App. Nos. CA-91-34 and CA-91-35, unreported.
[7] See State v. Corkran (1965), 3 Ohio St.2d 125, 209 N.E.2d 437. See, also, State v. Collier (1984), 22 Ohio App.3d 25, 28, 488 N.E.2d 887,891.
[8] See State v. Hankerson (Aug. 5, 1981), Hamilton App. No. C-800542, unreported.
[9] See State v. McAninch (May 2, 2001), Hamilton App. No. C-000519, unreported.
[10] See State v. Bateman (June 26, 1997), Franklin App. No. 96APA09-1159, unreported.
[11] See State v. Park (1962), 174 Ohio St. 81, 83-84, 186 N.E.2d 736,738.
[12] See State v. Rakes (Dec. 30, 1997), Paulding App. No. 11-97-9, unreported; State v. Sankey (Sept. 27, 1990), Franklin App. No. 89AP-437, unreported.
[13] See State v. Ridgeway (1972), 35 Ohio App.2d 254, 256,301 N.E.2d 716, 717.
[14] See State v. Woods (1982), 8 Ohio App.3d 56, 63, 455 N.E.2d 1289,1298; State v. Berger (Feb. 19, 1998), Cuyahoga App. No. 71618, unreported.
[15] See State v. Breaston (1993), 83 Ohio App.3d 410,614 N.E.2d 1156.
[16] See State v. Breaston (1993), 83 Ohio App.3d 410, 413,614 N.E.2d 1156, 1158. See, also, State v. Gleason (1996),110 Ohio App.3d 240, 248, 673 N.E.2d 985, 991; State v. Gatewood (Dec. 22, 2000), Hamilton App. No. C-000157, unreported; State v. Mitchell
(Dec. 5, 1996), Cuyahoga App. Nos. 67490 and 67491, unreported.