JOURNAL ENTRY AND OPINION
{¶ 1} Thomas Sekera appeals from a judgment of the common pleas court which convicted him of carrying a concealed weapon and sentenced him to three years of community control. On appeal, he assigns the following as errors for our review:
 {¶ 2} "The trial court failed to strictly comply with the dictatesof R.C. 2945.05 and was, thus, without jurisdiction to proceed to trialwithout a jury.
 {¶ 3} "As fact finder the trial court failed to make the findingthat the concealed weapon was a loaded firearm, therefore the appellantshould have been convicted of the first degree misdemeanor offense, notthe felony of the fourth degree."
 {¶ 4} After reviewing the arguments of the parties and the pertinent law, we affirm the judgment of the trial court.
 {¶ 5} On October 24, 2001, Sekera executed a written jury waiver in open court. During the colloquy with the trial judge the following took place:
 {¶ 6} "THE COURT: * * * Mr. Sekera, is this your signature on these documents?
 {¶ 7} "THE DEFENDANT: Yes, it is.
 {¶ 8} "THE COURT: Mr. Sekera, what you've signed here is a waiver of jury trial.
 {¶ 9} "Sir, the constitutions of the United States of America and the great State of Ohio guarantee to you the right to a trial by a jury in these cases.
 {¶ 10} "Do you understand that?
 {¶ 11} "THE DEFENDANT: Yes, I do."
 {¶ 12} Sekera's signed jury trial waiver was file-stamped by the clerk's office on October 24, 2001 at 11:56 a.m. However, the journal entry containing the waiver was not signed by the trial judge until October 26, 2001; it was not filed with the Clerk's office until October 30, 2001; and it was not journalized by the Clerk's office until October 31, 2001.
 {¶ 13} The case proceeded to trial before the court. Al Coleman testified that on March 6, 2001, he resided at 7221 Alice Avenue in Cleveland. On that date, Coleman, his fiancé, Olga Sarbinowski, and her six-year-old son were backing out of their driveway. Sekera, who lived four houses away, stopped at the end of Coleman's driveway and blocked Coleman's access to the street. Coleman exited his car and approached Sekera, who made a rude gesture with his finger while staring at Sarbinowski. Coleman believed Sekera harassed them because Coleman is African-American and Sarbinowski is Caucasian.
 {¶ 14} Sekera drove around the block and parked his truck in front of his house. Coleman drove towards Sekera's home and when his vehicle was parallel to Sekera's vehicle, he asked Sekara what he had on his mind and why he portrayed a menacing look. Coleman testified that in response, Sekera retrieved a handgun from the inner left pocket of his jacket and pointed it at him, Sarbinowski, and her son.
 {¶ 15} Coleman summoned the Cleveland police. Officer Rini responded, arrested Sekera, and retrieved the loaded firearm from his left coat pocket. The defense stipulated to the operability of the gun.
 {¶ 16} Sarbinowski testified and corroborated Coleman's version of events.
 {¶ 17} Sekera testified in his own defense. He admitted having a handgun on his person when he was arrested and stated he carried a weapon for personal safety because he feels threatened in the neighborhood. He further admitted that on the day of the incident, he was carrying the handgun loaded, with a bullet in the chamber. Regarding his confrontation with Coleman, Sekera testified he was driving home from work and saw Coleman brushing snow off the back of a vehicle, became concerned, and "flipped him the bird." Sekera communicated his dislike for Coleman, despite having never met him. He stated that when Coleman's vehicle stopped parallel to his in front of his home, he pulled out his handgun to show Coleman he was not a coward. Sekera also stated he did not see a weapon on Coleman.
 {¶ 18} After denying Sekera's Crim.R. 29 motion, the trial court found Sekera guilty of carrying a concealed weapon and sentenced him to three years of community control.
 {¶ 19} In his first assigned error, Sekera argues the trial court lacked jurisdiction to proceed to trial without a jury because his signed waiver was journalized seven days subsequent to the actual signing, and thus not part of the record. Sekera argues strict compliance with R.C.2945.05 mandates that an effective waiver must be journalized on the same day the defendant executes the signed waiver. We disagree.
 {¶ 20} R.C. 2945.05 provides that a jury waiver shall be in writing, signed by the defendant, and filed in the case and made a part of the record. The Ohio Supreme Court has stated that a failure to comply with the clear, unambiguous requirements of R.C. 2945.05 deprives the trial court of jurisdiction to conduct a defendant's trial without a jury.[1]
 {¶ 21} Sekera's claim is based on State v. Pless[2] and State exrel. Jackson v. Dallman.[3] In Pless and Dallman, the Supreme Court of Ohio held that the mere signing of a jury waiver form, no matter how clear on the face of the record, is insufficient to effect a valid waiver of a criminal defendant's jury trial right. Because strict compliance with R.C. 2945.05 is necessary to a valid jury waiver, a signed waiver form must be filed in the trial court and made part of the record in accordance with R.C. 2945.05.
 {¶ 22} State ex rel. Larkins v. Baker[4] presented a similar issue to the one at hand. There, the trial judge placed the defendant's signed jury waiver in the court's case file, but never filed it of record with the clerk's office. The waiver was physically located in the case file but had not been file-stamped. The Supreme Court of Ohio held that, despite Dallman's requirement of strict compliance with R.C. 2945.05, the trial court's failure to file-stamp the waiver was not a jurisdictional defect.[5] A year after Larkin, the Ohio Supreme Court decided Pless, in which it distinguished Larkins in part because "the record before [the court] contains no evidence that appellant's signed jury waiver form was ever included in the trial court's case file."[6]
 {¶ 23} According to Pless, strict compliance with R.C. 2945.05 is met upon the filing of the waiver; Pless makes no rule pertaining to when the filing occurs. In distinguishing Pless from Larkins, the Supreme Court of Ohio stated, "* * *, the record before us contains no evidence that appellants [sic] signed jury waiver form was ever included in the trial courts [sic] case file. * * * The trial court issued an entry specifically acknowledging that appellant had, in fact, waived his right to trial by jury. However, we find that there was a failure to strictly comply with R.C. 2945.05, since there is no evidence that appellants [sic] signed waiver form was ever filed and made part of the record in this case."[7] Here, the record reflects Sekera signed a voluntary waiver of jury trial on October 24, 2001. Additionally, the transcript of the bench trial demonstrates the trial court accepted the waiver and stated that it would be made part of the court record and filed on the same date. The fact that the waiver was not journalized until after the trial concluded is not fatal. The trial court strictly complied with the mandates of R.C. 2945.05 and Pless. Accordingly, the trial court was not divested of jurisdiction to proceed with a bench trial. The first assigned error is therefore overruled.
 {¶ 24} In his second assigned error, Sekera alleges the trial court failed to make a finding that the handgun was a loaded firearm and therefore, pursuant to R.C. 2945.75, he should have been convicted of a first degree misdemeanor rather than the fourth degree felony. We disagree.
 {¶ 25} R.C. 2945.75 provides that when the presence of one or more additional elements elevates an offense to a more serious degree, a guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.
 {¶ 26} In State v. Woods,[8] the court held, "The failure of verdict forms to comply strictly with R.C. 2945.75 does not constitute reversible error, when the verdicts incorporate the language of the indictments, the evidence overwhelmingly shows the presence of the aggravating circumstances, and defendants never objected at trial to the form of the verdicts."[9] In Woods, the verdict forms referred to the offenses "as charged in the indictment."[10]
 {¶ 27} The indictment in this case states the "defendant knowingly carried or had, concealed on his person or concealed ready at hand a deadly weapon or dangerous ordnance, to-wit: a loaded firearm." The trial court's journal entry states the court found Sekera guilty of carrying a concealed weapon "as charged in the indictment."
 {¶ 28} Further, on cross-examination, Sekera admitted that when the police encountered him on March 6, while he was shoveling snow, there was a bullet in the chamber of his handgun. In fact, Sekera stated, "I carry a round in the chamber with the safety on, yes."
 {¶ 29} Therefore, the verdict incorporated the language of the indictment, the evidence overwhelmingly showed the presence of the aggravating circumstance, and Sekera never objected at trial to the form of the verdict. Accordingly, the second assigned error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS; COLLEEN CONWAY COONEY, J., CONCURSIN JUDGMENT ONLY.
[1] State v. Pless (1996), 74 Ohio St.3d 333.
[2] Id.
[3] (1994), 70 Ohio St.3d 261.
[4] (1995), 73 Ohio St.3d 658.
[5] Id. at 661.
[6] Pless at 339.
[7] Id.
[8] (1982), 8 Ohio App.3d 56.
[9] Id. at 63.
[10] Id.