OPINION
{¶ 1} Defendant-appellant, Dennis Hines (hereinafter, "Hines"), appeals the sentence imposed by the Allen County Court of Common Pleas following his convictions for a weapon charge and multiple criminal drug charges.
{¶ 2} This case stems from a criminal investigation of cocaine and crack cocaine trafficking involving Hines. As part of the investigation, the police used a confidential informant to make three controlled buys of cocaine and crack cocaine. Before each transaction, law enforcement officers would photocopy money for identification purposes. The money was then issued to the confidential informant for the purpose of purchasing drugs.
{¶ 3} The first controlled buy occurred on or about June 17, 2003. The confidential informant met with Gene Klinger (hereinafter "Klinger") in Kenton, Ohio. Klinger and the confidential informant got into an automobile driven by Klinger and the two of them drove to Lima, Ohio. Once in Lima, Klinger parked his motor vehicle in a parking lot at the intersection of Main Street and Grand Avenue. Klinger then took the money he received from the confidential informant and exited the vehicle. Subsequently, Klinger walked along Grand Avenue where Hines met him. While this was taking place, the confidential informant remained in Klinger's vehicle. Police surveillance observed Klinger and Hines conduct a hand-to-hand exchange, after which Klinger returned to his vehicle and handed cocaine or crack cocaine to the confidential informant.
{¶ 4} Following the sale, law enforcement officers followed Klinger and the confidential informant back to Kenton. Klinger dropped the confidential informant off in Kenton. The confidential informant then contacted the investigators and turned over all of the drugs he had obtained from Klinger.
{¶ 5} After the first controlled buy, law enforcement officers weighed the drugs and discovered the amount was lower than the amount of drugs paid for by the confidential informant. Later that day, Klinger contacted the confidential informant to inquire whether he was satisfied with the drugs he had purchased. The confidential informant complained to Klinger that the amount of drugs received was lower than expected. Klinger told the confidential informant that he would have to talk to his contact in Lima. Klinger later contacted the confidential informant and told him that they could go to Lima and obtain the remaining drugs which had been mistakenly excluded. Thereafter, the confidential informant and Klinger went back to Lima in order to obtain the additional drugs. Klinger parked in the same parking lot, approached a parked car, and returned to his vehicle with a package of drugs. Law enforcement officers were unable to conduct surveillance of this second exchange since the arrangement was made so late. The drugs purchased in the first controlled buy included 4.95 grams of crack cocaine in the first transaction and 4.03 grams of crack cocaine in the second transaction.[1]
{¶ 6} The second and third controlled buys occurred on June 24 and July 3, 2003, respectively, in the same manner as the first controlled buy. The second and third controlled buys resulted in the purchase of 10.37 grams of crack cocaine and 9.72 grams of cocaine.
{¶ 7} On July 3, 2003, following the third controlled buy, investigators sought and obtained a valid warrant to search Hines' residence. During their search, investigators discovered cocaine, multiple plastic bags containing cocaine residue, digital scales, two loaded firearms, and three-thousand dollars ($3,000) in cash, which included some of the money given to the confidential informant to facilitate the third controlled buy. As a result of the investigation and search of his residence, Hines was arrested and taken into police custody.
{¶ 8} On January 15, 2004, Hines was indicted for five counts which included: count one of Trafficking in Crack Cocaine in violation of R.C. 2925.03(A)(C)(4)(d), a felony in the third degree; count two of Trafficking in Crack Cocaine pursuant to R.C. 2925.03(A)(C)(4)(e), a second degree felony; count three of Trafficking in Powder Cocaine under R.C. 2925.03(A)(C)(4)(c), a fourth degree felony; count four of Possession of Powder Cocaine, in violation of R.C. 2925.11(A)(C)(4)(a), a fifth degree felony; and count five of Having Weapons While Under Disability, a violation of R.C. 2923.13(A)(3), a fifth degree felony. Hines pleaded not guilty to all charges, and the matter proceeded to a jury trial.
{¶ 9} On April 29, 2004, the jury returned a guilty verdict on all five counts. Thereafter, on June 1, 2004, the trial court sentenced Hines to the following: five years imprisonment under count one, eight years imprisonment under count two, eighteen months imprisonment under count three, eleven months imprisonment under count four, and eleven months imprisonment under count five. The trial court ordered the imprisonment for counts one, two, and three be served consecutively to each other and consecutively to counts four and five, which were to be served concurrently.
{¶ 10} It is from this sentence that Hines now appeals and sets forth two assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I
It was an error of law for the trial court to enter a conviction and impose an enhanced sentence for the drug trafficking offenses in Count One, Two and Three of the indictment.
{¶ 11} In his first assignment of error, Hines asserts that the jury never returned a specific verdict finding the amount of drugs in counts one, two, and three. Therefore, Hines asserts the trial court could only, as a matter of law, convict and sentence him for the lesser degree of the offense pursuant to R.C.2945.75(A)(2). Further, Hines argues the substantial compliance standard is contrary to the legislative intent of R.C.2945.75(A)(2) and R.C. 2901.04(A). Hines also maintains the general verdict form did not provide the jury an opportunity to distinguish whether they found him guilty beyond a reasonable doubt for both the first and the second transactions that occurred on June 17 which were combined to form count one. Finally, Hines maintains the judge exceeded his authority when he imposed a sentence based on essential elements not found by the jury based on the United States Supreme Court decision in Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531,159 L.Ed.2d 403.
{¶ 12} R.C. 2945.75 provides:
(A) When the presence of one or more additional elements makes an offense one of more serious degree:
(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged. * * *
{¶ 13} In the case sub judice, the verdict forms for counts one, two, and three did not strictly comply with R.C.2945.75(A)(2) because the verdict did not state the degree of felony or the amount of the controlled substance involved.[2] However, some appellate courts, including this court, have upheld convictions where the verdict form substantially complied with the statute. See State v. Murphy (March 19, 1993), 3rd Dist. No. 5-92-42; State v. Woods (1982),8 Ohio App.3d 56, 455 N.E.2d 1289 (8th District), State v. Wireman, 4th Dist. No. 01CA662, 2002-Ohio-1526.
{¶ 14} Under the substantial compliance standard the "failure of the verdict forms to comply strictly with R.C. 2945.75(A)(2) does not constitute reversible error, when the verdicts incorporate the language of the indictments, the evidence overwhelming shows the presence of aggravating circumstances, and defendants never objected at trial to the form of the verdicts." State v. Woods (1982), 8 Ohio App.3d at 63, 455 N.E.2d 1289, citations omitted.
{¶ 15} In his brief, Hines concedes that the indictment "contained the statutory language and that the verdict forms stated trafficking in cocaine or crack cocaine as charged in the count * * * [and] that the charge to the jury contained the language of the indictment concerning the amount of the control[led] substance * * *." However, Hines maintains that substantial compliance is contrary to the legislative intent evidenced in R.C. 2945.75 and R.C. 2901.04(A).[3]
{¶ 16} We find Hines' argument unavailing and continue to adhere to the substantial compliance standard established in Woods.
{¶ 17} In the case sub judice, the indictments for counts one, two, and three contained the specific range of weights of the controlled substance required for that degree of felony. The trial court instructed the jury on the language of the indictment in the jury charge, by specifically reading each count of the indictment to the jury. The jury verdict form contained "as charged in count one/two/three" language, thus referring to the indictment. The state presented overwhelming evidence of the weight of the drugs involved in each controlled buy. Moreover, there is no evidence on the record that Hines objected to the verdict form as written.
{¶ 18} The jury verdict forms and the indictments in counts one, two, and three, when read together, clearly indicate that the jury found Hines guilty of the crimes with which he was charged. We, therefore, hold that the jury verdict forms are not invalid under R.C. 2945.75(A)(2).
{¶ 19} Hines maintains that given the fact that the amount of drugs from the two transactions occurring on or about June 17, 2003, were combined to form the charges in count one, the general verdict form prevented the jury from distinguishing whether there was proof beyond a reasonable doubt that he conducted both transactions. We find Hines' contention unavailing. The jury could have found Hines not guilty if it did not find, beyond a reasonable doubt, that he conducted both transactions.
{¶ 20} Lastly, Hines argues that pursuant to the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, the trial court cannot impose a sentence for the enhanced offense without the jury specifically finding the quantity of the controlled substance since quantity is an essential element of the offense. However, this court has previously determined that Blakely is not applicable to Ohio's statutory sentencing framework. See State v. Trubee (2005), 3d Dist. No. 9-03-65,2005-Ohio-552, at ¶ 16-38. Consequently, Hines' argument in this regard is without merit.
{¶ 21} For the foregoing reasons, Hines' first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II
The trial court committed an error of law by imposing maximum consecutive sentences.
{¶ 22} In his second assignment of error, Hines concedes that the trial court made the applicable findings for imposing maximum and consecutive sentences under R.C. 2929.14(C) and2929.14(E)(4), respectively. Hines, however, argues the "factual reasons set forth by the trial court to support those findings were not sufficient to impose maximum consecutive sentences." Specifically, Hines maintains that the trial court's only reasons for imposing maximum consecutive sentences were the amount of drugs and money involved, the transactions taking place in a residential neighborhood, and the frequency of the transactions. Hines asserts that he is already being punished more severely based upon the amount of drugs, and therefore, should not be punished twice on that basis. Hines also claims that the fact that offenses occurred in a residential neighborhood "carries minimum weight as the trial court had found that the Appellant did not cause or expect to cause physical harm."
{¶ 23} Upon review, an appellate court may not modify a criminal sentence or vacate the sentence and remand the matter to the trial court for re-sentencing unless it clearly and convincingly finds that the record does not support a sentencing court's required findings or determines that a sentence is otherwise contrary to law. R.C. 2953.08(G)(1) and (2). A sentence imposed by a trial court, therefore, will not be disturbed absent a showing by clear and convincing evidence that the trial court's sentence is contrary to law. R.C. 2953.08(G). The trial court is in the best position to make the fact-intensive evaluations required by the sentencing statutes as the trial court has the best opportunity to examine the demeanor of the defendant and evaluate the impact of the crime on the victim and society. State v. Martin (1999), 136 Ohio App.3d 355,361, 736 N.E.2d 907.
{¶ 24} Under R.C. 2929.14(C), the trial court may only sentence an offender to the maximum term if it finds that the defendant is a person who "committed the worst forms of the offense [or] * * * who pose[s] the greatest likelihood of committing future crimes." In order to sentence a defendant to consecutive terms, R.C.2929.14(E)(4) requires the sentencing court to find that consecutive sentences are "necessary to protect the public" or to "punish the offender" and are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Further, under R.C. 2929.14(E)(4), trial courts are required to find the existence of one of the three following circumstances:
(a) [t]he offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing * * * or was under post-release control for a prior offense;
(b) * * * the harm caused by * * * the multiple offenses * * * was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct;
(c) [t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
The trial court must also state its reasons for imposing maximum and consecutive sentences. R.C. 2929.19(B)(2)(c); R.C.2929.19(B)(2)(d).
{¶ 25} Hines concedes the trial court made the required findings for imposing maximum and consecutive sentences, but argues the trial court's reasons supporting those findings are insufficient to impose maximum and consecutive sentences.
{¶ 26} The trial court's reasons for imposing maximum and consecutive sentences included the amount of drugs, the amount of money involved, the frequency of the drug transactions, the location of the transactions, and Hines' prior drug offenses. Hines criminal history involves drug related crimes including convictions for distribution of marijuana in 1978, drug trafficking in 1980, and possession of drugs in Oklahoma City in 1991. Hines has also been convicted of a probation violation.
{¶ 27} Hines further claims the fact that the transaction occurred in a residential area should have been given little weight as a reason to support maximum and consecutive sentences since the trial court also found that Hines did not intend to cause physical harm under 2929.12(C)(3).
{¶ 28} When sentencing a defendant, the trial court has significant discretion in deciding what weight to allocate to the statutory factors listed in R.C. 2929.12. State v. Delong,2004-Ohio-6046, ¶ 11, citations omitted. Therefore, we find Hines' argument unavailing.
{¶ 29} Hines maintains that the trial court should not use the amount of the drugs or frequency of the transactions as reasons to support maximum and consecutive sentences since the degree of felony was already enhanced based on amount and he is being sentenced separately for each transaction. Even assuming, arguendo, that Hines contention is correct, the record would still support maximum and consecutive sentences based on Hines' previous criminal record and the fact that the controlled buys occurred in a residential area.
{¶ 30} For the foregoing reasons, we find Hines has been unable to show by clear and convincing evidence that the trial court's imposition of maximum and consecutive sentences was unsupported by the record. Hines' second assignment of error is without merit, and thus, overruled.
{¶ 31} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
Bryant and Shaw, JJ., concur.
[1] Hines contends that there is a disagreement over the amount of drugs involved in count one. Matthew Congleton, a forensic scientist with the Bureau of Criminal Identification and Investigation (hereinafter "BCI"), testified that the substances obtained from the first controlled buy consisted of 4.9 grams and 4.03 grams of crack cocaine. However, the BCI report stated 4.9 grams and 4.30 grams of crack cocaine. The difference in amount between 4.03 and 4.30 grams of crack cocaine would not affect the degree of felony involved.
[2] The signed jury verdict form for count one stated, "[w]e, the jury, being duly impaneled, sworn and affirmed find the defendant, DENNIS HINES, guilty of TRAFFICKING IN CRACK COCAINE as charged in Count One." Similarly, the signed jury verdict form for count two verdict provided, "[w]e, the jury, being duly impaneled, sworn and affirmed find the defendant, DENNIS HINES, guilty of TRAFFICKING IN CRACK COCAINE as charged in count two." Finally, the language in the verdict form for count three was similar to counts one and two and said, "[w]e, the jury, being duly impaneled, sworn and affirmed find the defendant, DENNIS HINES, guilty of TRAFFICING IN COCAINE as charged in Count Three."
[3] R.C. 2901.04(A) provides in pertinent part, "* * * sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused."