{¶ 1} Defendant-appellant, Wilson Quinones, appeals his conviction, sentence and the finding of sexual predator status. For the reasons set forth below, we affirm his conviction and sexual predator status, and modify his sentence.
 {¶ 2} Appellant was indicted by a Cuyahoga County Grand Jury in a 15-count indictment. Counts one, two and three charged rape, alleged to have occurred on January 5, 2005, and each contained a sexually violent predator specification. Count four charged kidnapping, alleged to have occurred on January 5, 2005, and contained a sexual motivation specification and a sexually violent predator specification. Count five charged gross sexual imposition, alleged to have occurred on January 5, 2005, and contained a sexually violent predator specification. Counts six through 15 charged rape, alleged to have occurred December 1, 2001 through January 31, 2004.
 {¶ 3} With the exception of the sexual motivation specification attendant to the kidnapping charge, the specifications were bifurcated, the underlying charges were tried to a jury and the specifications were tried to the court. Several witnesses testified on behalf of the State at the jury trial. At the conclusion of the State's case — in-chief, the defense made a Crim.R. 29 motion for acquittal. The court granted the defense's motion as to counts five (gross sexual imposition), 11, 12, 13, 14 and 15 (five out of the ten rapes alleged to have occurred between December 1, 2001 and January 31, 2004). The defense's motion was denied as to the other charges. The defense did not present any evidence.
 {¶ 4} The jury returned a guilty verdict on the rape charges contained in counts one, two and three, and the kidnapping charge and sexual motivation specification contained in count four (the remaining offenses alleged to have occurred on January 5, 2005). Appellant was found not guilty by the jury of the remaining charges (the remaining five rapes alleged to have occurred between December 1, 2001 and January 31, 2004). The court found appellant not guilty of the sexually violent predator specifications.
 {¶ 5} Appellant was sentenced to a 24-year prison term. Specifically, appellant was sentenced to eight years on each of the three rape counts, to be served consecutively, and four years on the kidnapping count, to be served concurrently with the rape sentence. Appellant was also labeled both a sexual predator and habitual sexual offender.
 {¶ 6} At trial, the victim, whose native language is Spanish, testified through an interpreter as to the facts which gave rise to appellant's indictment.[1] She explained that she lost her sight in 2001 after giving birth to her youngest child, but had become acquainted with appellant prior to losing her eyesight and was familiar with his voice.[2]
 {¶ 7} On January 5, 2005, the victim lived with her boyfriend, Juan Rosa, on Storer Avenue in Cleveland. She testified that on that date, appellant came to her house when she and Rosa were there, and asked Rosa to go to the store for him. Rosa left and appellant closed the door behind him.
 {¶ 8} The victim described the ensuing events as appellant "picking" her up from the sofa, telling her "to get up" from the sofa, and telling her to pull her pants down. She did not want to pull her pants down. The victim did not testify as to how her pants got pulled down, but described that after they were down, appellant told her to bend down and she did. She testified that appellant then "dragged" her to the sofa, where she was positioned on her knees, with her face in the sofa. The victim explained that while in that position, appellant anally and vaginally raped her and performed oral sex on her against her will. She described appellant as having ejaculated inside her and that some of the ejaculated substance landed on the floor.
 {¶ 9} Upon Rosa's return from the store, he noticed the ejaculated substance on the floor and questioned the victim as to what it was. She testified that neither she nor appellant responded to Rosa's question. She described feeling "panicked" because appellant had threatened her and, thus, she did not say anything about the incident until the following day, when she told her daughter, who called the police. The victim testified that her daughter spoke with the police because she was too "panicked" to speak with them. The victim also testified that appellant had previously raped her five times.
 {¶ 10} On cross-examination, the victim initially testified that she made a statement to the police. Later in her testimony she stated, however, that she never spoke with the police.
 {¶ 11} At a sidebar conference, the court conducted an in camera review of the victim's statement. Defense counsel argued that there were material inconsistencies between her statement and her direct testimony. The court agreed that there were two inconsistencies: (1) in her statement, the victim indicated that she had been twice raped anally on January 5, 2005, but testified that she had been raped by appellant three times on that date — once anally, once vaginally and once orally; (2) in her statement, the victim indicated that she had been raped by appellant twice a week over a three-year period, but testified that she had been raped by appellant on five other occasions. The defense also challenged the victim's denial on cross-examination that she had even made a statement to the police.
 {¶ 12} The court then inquired of counsel as to whether they believed there were any other inconsistencies; counsel did not indicate any. The court further indicated that it did not feel it was necessary for defense counsel to use the statement during cross-examination because counsel already had the necessary information. Counsel did not object to the court's ruling, and went on to cross — examine the victim about the inconsistencies.[3]
 {¶ 13} The victim's boyfriend, Rosa, also testified. He explained that appellant came to the house he shared with the victim on January 5, 2005, and asked him to go to the store. Rosa testified that the door was not locked when he arrived back home, and that upon entering the house he saw a liquid substance on the floor in front of the victim. He questioned her concerning the substance, and she responded that she had coughed up something and spit it out on the floor. Rosa cleaned up the substance with a napkin, which he threw in the garbage.
 {¶ 14} The victim's daughter testified that on the evening of January 6, 2005, she went to her mother's house to visit, and observed that she was quiet and nervous. The daughter asked her mother what was wrong and her mother started crying. The victim subsequently told her daughter that appellant had raped her the day before, describing to her that appellant had "tried to force her to suck his private part."
 {¶ 15} During a sidebar conference, appellant's counsel challenged omissions in the daughter's testimony as opposed to her two statements to the police: "[i]t isn't so much inconsistencies. There is a lot in her statement that she didn't testify about." Appellant's counsel agreed, however, that "I don't really need [the statements] to ask her the questions I need to ask her."
 {¶ 16} During cross-examination, the daughter admitted that her mother did not tell her that appellant had anally, orally and/or vaginally raped her on January 5.
 {¶ 17} The napkin with which Rosa wiped the substance from the floor was retrieved by the police and analyzed; it was appellant's semen. At the conclusion of the trial, appellant was convicted as outlined above.
 {¶ 18} At the sexual predator hearing, the victim's daughter testified that appellant had initiated physical confrontations with her on approximately four or five prior occasions. She described that one of the occasions occurred when she was eight months pregnant, and appellant grabbed her by the neck and lifted her against the wall until she could not breathe. On another occasion, also occurring when she was pregnant, appellant grabbed her arm so hard that he left marks and handprints.
 {¶ 19} The daughter further testified that appellant talked her into having anal sex with him and videotaping sexual encounters. She also testified that appellant told her that he had been accused of having a sexual relationship with his 14-year — old niece.
 {¶ 20} The court-appointed social worker who evaluated appellant testified that his score on the Static-99 test indicated that he poses a moderate-to-high risk of committing another sexually oriented offense. The social worker opined that appellant has a personality disorder with narcissistic and antisocial features.
 {¶ 21} The defense called Dr. Rita Politzer on its behalf. Dr. Politzer testified that appellant's score on the Hare Psychopathy test indicated that he poses a moderate risk of committing another sexually violent offense. Dr. Politzer also testified that appellant's score on the Static-99 test indicated that he poses a moderate-to-high risk of sexually reoffending. Dr. Politzer opined that, overall, appellant poses a moderate risk for further sexual offenses.
 {¶ 22} In his first assignment of error, appellant contends that the trial court erred by not allowing defense counsel to fully cross-examine the State's witnesses with prior inconsistent statements and omissions. Specifically, appellant challenges the opportunity his counsel had to cross-examine the victim.
 {¶ 23} As previously mentioned, on cross-examination counsel questioned the victim as to whether she had made a statement to the police. She initially indicated that she had. Several questions later, when responding to the defense's questioning about her statement, however, the victim responded that she never spoke to the police.
 {¶ 24} At a sidebar conference, the court conducted an in camera review of the victim's statement. Defense counsel argued that there were material inconsistencies between her statement and her direct testimony. The court agreed that there were two inconsistencies: (1) in her statement, the victim indicated that she had been raped twice anally on January 5, 2005, but testified that she had been raped by appellant three times on that date — once anally, once vaginally and once orally; (2) in her statement, the victim indicated that she had been raped by appellant twice a week over a three-year period, but testified that she had been raped by appellant on five other occasions.
 {¶ 25} The defense also challenged the victim's denial on cross-examination that she made a statement. The court responded as follows:
 {¶ 26} "That is how her testimony has been on some other things, where she lived, how things happened. It does take her a little bit of time to get back to an accurate rendition of what others have testified to. * * * [I]n the other circumstances it does not appear that she's embellished or made anything up here. There are material inconsistencies * * *. And you can ask her how she was raped on January 5th, how allegedly she was raped. And you can ask her about the number of times he allegedly raped her on the other occasions. Because that is different than her version here, as opposed to what she said in the past."
 {¶ 27} Crim.R. 16(B)(1)(g) provides for an in camera inspection of a witness' statements to determine inconsistencies. The rule reads in relevant part as follows:
 {¶ 28} "In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.
 {¶ 29} "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.
 {¶ 30} "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon."
 {¶ 31} The trial court properly conducted an in camera examination of the victim's statement and found that her testimony was inconsistent on two grounds. The court asked the parties if they felt there were any other inconsistencies, and they responded that there were not. The court then instructed appellant's counsel that he was permitted to cross-examine the victim as to those two areas. The court indicated that it did not feel it was necessary for counsel to use the statement during cross-examination because he already had the necessary information. Counsel did not object to the court's ruling. Counsel then questioned the victim as to the inconsistencies. Appellant, therefore, is mistaken in his assertion that the trial court did not allow his counsel to question the victim as to the inconsistencies in her statement.
 {¶ 32} Moreover, appellant's assertion that the trial court erred by not admitting the statement into evidence is also without merit. Specifically, counsel never attempted to introduce the statement into evidence. In order to preserve the admissibility of evidence for appeal, an appellant must seek to admit the evidence at trial. State v.Grubb (1986), 28 Ohio St.3d 199, 503 N.E.2d 142. The failure to do so constitutes a waiver on appeal. Id. Because appellant's counsel failed to attempt to admit the statement into evidence, the issue is waived.
 {¶ 33} Accordingly, appellant's first assignment of error is overruled.
 {¶ 34} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 35} In State v. Martin (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, the First Appellate District court set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 36} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id. at 175.
 {¶ 37} The weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Martin, supra. Thus, a reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proved the offense beyond a reasonable doubt. State v. Eley (1978),56 Ohio St.2d 169, 383 N.E.2d 132.
 {¶ 38} R.C. 2907.02(A)(2), governing rape, provides as follows:
 {¶ 39} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 40} R.C. 2905.01(A)(2)(4), governing kidnapping, provides in pertinent part as follows:
 {¶ 41} "(A) No person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 42} "* * *
 {¶ 43} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 44} "* * *
 {¶ 45} "(4) To engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will."
 {¶ 46} The State presented evidence from which the jury could have reasonably concluded that it proved beyond a reasonable doubt that appellant kidnapped and raped the victim on January 5, 2005. Appellant's second assignment of error, therefore, is overruled.
 {¶ 47} In his third assignment of error, appellant challenges his sexual predator label. The Ohio Revised Code defines a sexual predator as "a person who has been convicted of or pleaded guilty to committing a sexually-oriented offense and is likely to engage in the future in one or more sexually-oriented offenses." R.C. 2950.01(E); State v.Winchester (2001), 145 Ohio App.3d 92, 761 N.E.2d 1125.
 {¶ 48} The burden of proof is on the State to show by clear and convincing evidence that the offender has been convicted of a sexually-oriented offense and that the offender is likely to engage in the future in one or more sexually-oriented offenses. State v.Eppinger, 91 Ohio St.3d 158, 2001-Ohio-247, 743 N.E.2d 881.
 {¶ 49} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Id., citingCross v. Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118.
 {¶ 50} In State v. Hills, Cuyahoga App. No. 78546, 2002-Ohio-497, we explained our standard of review of a sexual predator classification as follows:
 {¶ 51} "[T]his court's role is to determine whether the weight of the evidence supports the trial court's decision. [Statev.]Cook [(1988),] 83 Ohio St.3d [404] at 426; State v. Childs
(2001), 142 Ohio App.3d 389, 755 N.E.2d 958. Decisions that are supported by competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence.Seasons Coal v. Cleveland (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273;Cook, supra, 83 Ohio St.3d 404; [State v.] Steele [(Sept. 7,2000), Cuyahoga App. No. 76205.] Moreover, this court must be mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. DeHass, supra.
 {¶ 52} R.C. 2950.09(B)(3) lists the relevant factors that the trial court must consider in making a sexual predator determination:
 {¶ 53} "(a) The offender's or delinquent child's age;
 {¶ 54} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 55} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 56} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 57} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 58} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 59} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 60} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 61} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty; [and]
 {¶ 62} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 63} The trial court considered the factors set forth in R.C.2950.09(B)(3), and made several findings. Specifically, the court found that appellant's prior criminal record, failure to complete a sexual offender's program, personality disorder with narcissistic and antisocial features, demonstrated pattern of abuse toward the victim, and cruelty in taking advantage of a blind woman, all weighed against him. The court further noted both experts' opinions. Similarly, the court noted the factors that weighed in favor of appellant, those being his age, the age of the victim and the lack of the use of drugs and/or alcohol in committing the offense. The court found, after weighing the factors, that the State presented clear and convincing evidence that appellant is a sexual predator.
 {¶ 64} Upon review, we find that the weight of the evidence supports the trial court's decision and, accordingly, overrule appellant's third assignment of error.
 {¶ 65} In his fourth and final assignment of error, appellant contends that the trial court erred in imposing multiple sentences on the rape and kidnapping charges because they were allied offenses of similar import committed with a single animus. We agree.
 {¶ 66} In State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, the Supreme Court of Ohio established guidelines to determine whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B). In Logan, the court held that "where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." Id. at subparagraph (a) of the syllabus. TheLogan court also recognized that prolonged restraint, secretive confinement, or substantial movement of the victim are factors that establish a separate animus for kidnapping. Id. at subparagraph (a) of the syllabus.
 {¶ 67} Here, the victim testified that the January 5 rapes occurred in the same room; appellant did not remove her from the place where she was found, nor did he secretly confine her. The movement from one area of the room to another area of the room was merely incidental to the underlying crime of rape. Thus, appellant should not have been sentenced on the kidnapping count. Pursuant to R.C. 2953.08(G), we modify appellant's sentence by deleting the concurrent four-year term on the kidnapping charge imposed by the trial court.
 {¶ 68} Accordingly, appellant's fourth assignment of error is sustained.
 {¶ 69} Conviction and sexual predator status affirmed; sentence modified.
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for correction of entry and execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., CONCURS COLLEEN CONWAY COONEY, J., CONCURS IN PART AND DISSENTS IN PART
[1] The victim was the third witness to testify at trial, and testified after the court held a hearing and found her competent. As the trial court noted, and as will be discussed in more detail in this opinion, it took her "a little bit of time to get back to an accurate rendition of what the others testified to."
[2] Appellant is the former boyfriend of the victim's daughter. Appellant and the daughter had previously resided with the victim and her boyfriend in duplex homes.
[3] Counsel also questioned the victim about her statement to the police; again, the victim initially agreed that she made a statement, but then later testified that she did not make a statement, stating that the police came to her house and her daughter spoke with them because she was too "nervous." On redirect examination, the victim explained, however, that when the police came to her house on January 6, her daughter spoke with the police, but she and her daughter went to the police station on a later date and she gave a statement.