JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Charles White ("White"), appeals his convictions and sentence. Finding merit to the appeal, we affirm in part and reverse in part.
 {¶ 2} In 2006, White was charged with seven counts of aggravated robbery, seven counts of kidnapping, and one count of having a weapon while under disability. The aggravated robbery and kidnapping counts contained one-and three-year firearm specifications.
 {¶ 3} The matter proceeded to a jury trial except for the weapon under disability count, which was tried to the bench. At the close of the State's case, the trial court dismissed three of the aggravated robbery counts and three of the kidnapping counts. The jury convicted White of the remaining charges with the accompanying firearm specifications, and the trial court found him guilty of the weapon under disability charge.
 {¶ 4} The trial court sentenced White to ten years in prison for aggravated robbery, to run concurrent with seven years for kidnapping and ten months on the weapon charge. The court also sentenced White to a mandatory three years for the firearm specifications, to run consecutively to the underlying charges, for a total sentence of thirteen years.
 {¶ 5} The following facts were adduced at trial.
 {¶ 6} On October 18, 2003, Donesia Justice ("Justice") was working at the hair salon she owned on Euclid Avenue in Cleveland. Shortly before noon, two men *Page 3 
entered the busy salon, brandishing handguns. One man entered through the front door and the other through the back door. There were approximately thirty employees and customers in the salon at the time. The two men ordered the customers to the back of the salon and told them to lie on the floor.
 {¶ 7} Justice activated the security alarm, and the gunman who had entered through the back door threatened to shoot her because she had pulled the alarm. The two men proceeded to search the victims and to take their purses, money, and other valuables. The men then fled.
 {¶ 8} A few days after the robbery, Justice was able to assist the Cleveland police in developing a composite sketch of the gunman who had entered through the back door. Little progress was made on the case until 2005, when Justice contacted Cleveland police claiming to have seen a photo of the gunman on the news.
 {¶ 9} Justice subsequently picked White out of a photo array. Necha Scott ("Scott"), a salon employee who was also robbed, was able to identify White as the man who had entered through the back door of the salon. The detective showed the photo array to three other women who were in the salon at the time of the robbery, but they were unable to identify White.
 {¶ 10} At the close of the State's evidence, the trial court granted White's motion for acquittal for counts that related to three alleged victims who did not testify at trial. *Page 4 
 {¶ 11} White now appeals, raising five assignments of error. The third assignment of error will be discussed first.
 Allied Offenses of Similar Import {¶ 12} In the third assignment of error, White argues that the trial court erred by failing to merge the kidnapping and aggravated robbery charges.
 {¶ 13} In State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus, the Ohio Supreme Court adopted the following guidelines to establish whether kidnapping and another offense of the same or similar kind are committed with a separate animus pursuant to R.C. 2941.25(B):
 "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."
 {¶ 14} Kidnapping and aggravated robbery are allied offenses of similar import where the restraint of the victim is merely incidental to the crime of robbery. Id. at 130-131; State v. Taogaga,165 Ohio App.3d 775, 2006-Ohio-692, 848 N.E.2d 861; State v. Jones (Dec. 10, 1992), Cuyahoga App. No. 61279; State v. Burks (Aug. 21, *Page 5 
1991), Cuyahoga App. No. 58975. Kidnapping is separate and distinct from the crime of aggravated robbery where the kidnapping protrudes from the facts of the case and, in such case, a separate animus is thus established. Taogaga, supra, citing Jones, supra.
 {¶ 15} In the instant case, there is no evidence to show that the victims were moved from the salon or were subjected to a greater risk of harm beyond that already created by the factors involved in the commission of the aggravated robbery. See Taogaga, supra. InLogan, supra, the Court stated that "when a person commits the crime of robbery, he must, by the very nature of the crime, restrain the victim for a sufficient amount of time to complete the robbery." See alsoState v. Jenkins (1984), 15 Ohio St.3d 164, 473 N.E.2d 264 (holding that implicit within every aggravated robbery is a kidnapping). TheLogan Court further noted "without more, there exists a single animus, and R.C. 2941.25 prohibits convictions for both offenses."Logan, supra at 132.
 {¶ 16} The State does no more than argue that a separate animus existed because the victims were ordered from the front of the salon to the back; thus, the State argues, the distance and concealment demonstrate a separate animus from the aggravated robbery. The State fails to cite any authority to support its position and we decline to make their argument for them. *Page 6 
 {¶ 17} We find that under the facts of the instant case, the kidnapping and aggravated robbery were committed with a single animus. Although the record shows that the customers were ordered to the back of the salon, the entire incident lasted no more than five to seven minutes. Compare, State v. Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873 (victim restrained for four hours and driven from place to place); State v. Williams, Cuyahoga App. No. 85237, 2005-Ohio-3715 (act of binding the victims and leaving them to free themselves was not merely incidental to the robberies, but had a significance independent of the robberies); State v. Jones (Dec. 10, 1992), Cuyahoga App. No. 61279 (taping up the victims produced restraint which was greater than that necessary to effectuate the aggravated robbery). Although the evidence showed that White aimed his firearm at people inside the salon and forced them to the back of the salon, we find that such limited movement of the victims was incidental to the separate underlying crime of aggravated robbery. See Jenkins, supra at 198.
 {¶ 18} Thus, we find no separate animus to independently support the convictions for kidnapping. The kidnapping offenses should have merged into the aggravated robbery convictions pursuant to R.C. 2941.25.
 {¶ 19} Although defense counsel failed to raise the issue at the trial court level, "where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for *Page 7 
all such offenses, but the defendant may be convicted of only one." R.C.2941.25. Thus, "it is plain error to impose multiple sentences for allied offenses of similar import, even if the sentences are run concurrently." State v. Sullivan, Cuyahoga App. No. 82816,2003-Ohio-5930, T|40; State v. McSwain, Cuyahoga App. No. 83394,2004-Ohio-3292. Therefore, the trial court should have merged the convictions for the two offenses rather than imposed concurrent sentences.
 {¶ 20} White urges us to remand for resentencing. We elect, however, to vacate the kidnapping convictions and sentences. See R.C.2953.08(G)(2); State v. Saxon, 109 Ohio St.3d 176, 2006-Ohio-1245;State v. Yarbrough, 104 Ohio St.3d 1, 2004-Ohio-6087, _103.
 {¶ 21} Therefore, we sustain the third assignment of error and vacate the kidnapping convictions and sentences.
 Manifest Weight of the Evidence {¶ 22} In the first assignment of error, White argues that his convictions are against the manifest weight of the evidence.
 {¶ 23} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." Thompkins, supra. As the Ohio Supreme Court stated: *Page 8 
 "Weight of the evidence concerns the ` inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 24} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost *Page 9 
its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Garrow (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814.
 {¶ 25} First, because we sustained the third assignment of error and vacated the kidnapping convictions, we need not address the issue of kidnapping being against the manifest weight of the evidence. Furthermore, White has raised no argument involving his conviction for having a weapon while under disability, so we need not address that charge.
 {¶ 26} White was convicted of four counts of aggravated robbery pursuant to R.C. 2911.01, which states in pertinent part:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *."
 {¶ 27} White argues that the only evidence linking him to the crime was unreliable and "stale" eyewitness testimony. He claims that because there was no physical evidence linking him to the crime and the witness identification came two years after the robbery, the jury must have lost its way in convicting him of *Page 10 
aggravated robbery. White also points out that there were discrepancies in the witnesses' descriptions of the gunmen.
 {¶ 28} We first note that proof of guilt may be made by real evidence, circumstantial evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value.State v. Nicely (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236. It is not surprising that there was no physical evidence linking White to the crime. The detective testified that by the time the police arrived at the crime scene it had been contaminated by the thirty people present in the salon. Furthermore, White was not apprehended until two years after the crime occurred, so evidence from the robbery would likely be gone.
 {¶ 29} White argues that although Justice testified that she was certain of her identification of White, she was mistaken. To support this claim, he points first to the testimony of the detective, who stated that after interviewing Justice, he started looking for a juvenile. White mischaracterizes the detective's testimony, however. The detective testified that he was looking for the juvenile to obtain information as to who might have robbed the salon's patrons, not because the juvenile was a suspect in the robbery. The witnesses clearly testified that they did not know the gunmen, who were in their twenties.
 {¶ 30} White also claims the description of the perpetrator which was given to the 911 dispatcher did not match White. Although the description was different, it is *Page 11 
unclear who provided that description to the dispatcher. There were multiple calls made to 911 from different locations, and the testimony does not reveal whether someone inside the salon or an outside observer gave the description; thus, it is unknown who provided that description.
 {¶ 31} White next argues that because Justice and Scott were the only victims able to identify White from the photo array, any identification is unreliable. We find no merit to this argument. Although there were witnesses who were unable to identify White when shown the photo array two years after the incident, both Justice and Scott immediately identified White. Moreover, at least one witness testified that she did not even see the "back door" gunman. Justice, on the other hand, testified that she stared at White the entire time he was in the salon because he had the gun pointed at her and was yelling at her.
 {¶ 32} Further supporting the identification is the testimony from the detective that Justice and Scott were separately shown the photo array and each immediately picked White as the gunman. The detective further testified that he switched the order of the photos in each array to make sure there was no witness collaboration in the identification.
 {¶ 33} Despite discrepancies in the testimony, we find that other aspects of the witnesses' descriptions were accurate. It was within the province of the jury to determine whether the eyewitness identification was sufficiently reliable and accurate *Page 12 
to be worthy of belief. We further find that any minor inconsistencies do not lead to the conclusion that White's conviction is against the manifest weight of the evidence.
 {¶ 34} Therefore, the first assignment of error is overruled.
 Effective Assistance of Counsel {¶ 35} In the second assignment of error, White argues that he was denied effective assistance of counsel because his attorney failed to call an expert in the field of eyewitness identification. This assignment of error lacks merit.
 {¶ 36} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, supra at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, supra at 143.
 {¶ 37} In determining whether counsel's performance fell below an objective standard of reasonableness, "judicial scrutiny of counsel's performance must be highly deferential." Strickland, supra at 689. Because of the difficulties inherent in *Page 13 
determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 38} In the instant case, White claims that because his conviction was "based solely on two unreliable eyewitness identifications, * * * his counsel was constitutionally deficient in failing to present expert testimony to support his defense that he was misidentified."
 {¶ 39} In State v. Madrigal, 87 Ohio St.3d 378, 2000-Ohio-448,721 N.E.2d 52, the Ohio Supreme Court rejected a similar claim that counsel should have obtained an expert on eyewitness identification. The court stated that "resolving this issue in [the defendant's] favor would be purely speculative. Nothing in the record indicates what kind of testimony an eyewitness identification expert could have provided. Establishing that would require proof outside the record * * *. Such a claim is not appropriately considered on a direct appeal." Id. at 390-391, 721 N.E.2d 52; see also State v. Bethel, 110 Ohio St.3d 416,2006-Ohio-4853, 854 N.E.2d 150.
 {¶ 40} Likewise, in the instant case, although White discusses at great length the supposed unreliability of eyewitness testimony, the record is devoid of any information suggesting what kind of testimony an expert could have provided, e.g. affidavits demonstrating the probable testimony. See Madrigal, supra. *Page 14 
 {¶ 41} As in Madrigal, defense counsel in this case evidently decided not to request the appointment of an eyewitness identification expert, choosing instead to rely on the cross-examination of some of the witnesses in order to impeach the eyewitnesses. Thus, we reject White's claim that his counsel was ineffective and overrule the second assignment of error.
 Defendant's Presence at Trial {¶ 42} In the fourth assignment of error, White argues that the trial court erred in ruling on his Crim.R. 29 motion outside his presence. He claims that the trial court's decision to rule on his Crim.R. 29 motion for acquittal outside his presence deprived him of a fair trial. He also contends that the trial court erred in discussing jury instructions outside his presence.
 {¶ 43} As explained by the Ohio Supreme Court in State v.Williams (1983), 6 Ohio St.3d 281, 286, 452 N.E.2d 1323:
 "The Fifth Amendment to the federal Constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person `of life, liberty, or property, without due process of law.' Similarly, Section 10, Article I of the Ohio Constitution mandates that `[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel.' As the constitutional principle of `due process' has evolved on both the state and federal levels, the courts have broadened its *Page 15 
guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. [Citations omitted]. In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim. R. 43(A) which provides, in pertinent part, that a `defendant shall be present at * * * every stage of the trial * * *.'"
 {¶ 44} We find White's absence during the court's ruling on the Crim.R. 29 motion does not constitute reversible error. First, White's interests were protected by his counsel, who was present for the court's ruling on the motion. Second, no argument occurred on the motion in White's absence. The oral argument occurred while White was in the courtroom. White was not absent during the argument, nor when any evidence of his guilt was presented. See State v. Roe (1989),41 Ohio St.3d 18, 27, 535 N.E.2d 1351. Thus, there was nothing that White could have said to contribute to his defense.
 {¶ 45} As this court stated in State v. Woods (1982),8 Ohio App.3d 56, 61-62:
 "A defendant cannot be excluded from testimonial proceedings where his knowledge might assist his counsel. He is not prejudiced by his absence from discussions about legal issues, such as side-bar arguments about evidentiary objections. His counsel's involvement in reviewing a witness statement satisfies defendant's rights, since defendant cannot supply any information that aids his counsel in determining whether the statement conflicts with the witness' direct testimony." *Page 16 
 {¶ 46} Moreover, White's failure to timely object constituted a waiver of his presence. State v. Palmer, 80 Ohio St.3d 543, 559, 1997-Ohio-312,687 N.E.2d 685. This court has consistently held that the failure of counsel to object to the rendition of the verdict in a felony case in the absence of the defendant constitutes waiver of any perceived error. See State v. George, Cuyahoga App. No. 80158, 2003-Ohio-4170; State v.Hayes (Sept. 5, 1996), Cuyahoga App. No. 70052; State v. Woods (1982),8 Ohio App.3d 56, 455 N.E.2d 1289; State v. Zagger (Aug. 13, 1981), Cuyahoga App. No. 42540. As we stated in George, supra, "unlike the opportunities provided at trial and sentencing where the defendant is given an opportunity to speak on his own behalf, there was nothing he could have said at the time the court returned the verdict which would have changed the outcome."
 {¶ 47} Finally, other than making the blanket assertion that his rights were violated, White does not advance any argument that his absence prevented a fair trial.
 {¶ 48} As to his absence during a short discussion regarding jury instructions, we have found that a defendant cannot be excluded from testimonial proceedings where his knowledge might assist his counsel.State v. Woods (1982), 8 Ohio App.3d 56, 61, 455 N.E.2d 1289. A defendant, however, is not prejudiced by his absence from discussions about legal issues, e.g. a hearing on proposed jury instructions.State v. White, 82 Ohio St.3d 16, 26, 1998-Ohio-363, 693 N.E.2d 772. *Page 17 
 {¶ 49} Therefore, the fourth assignment of error is overruled.
 Sentencing {¶ 50} In the fifth assignment of error, White argues that the trial court erred in sentencing him pursuant to State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. In particular, White argues thatFoster should not apply to his case because his alleged crimes occurred prior to the Ohio Supreme Court's decision and his due process rights are violated by an ex post facto application of Foster.
 {¶ 51} We recently addressed these identical issues in State v.Mallette, Cuyahoga App. No. 87984, 2007-Ohio-715, and determined the following:
 "Foster addresses the constitutionality of sentences imposed pursuant to Am. Sub. S.B. No. 2, effective July 1, 1996. S.B. 2 is applicable to all offenses committed on or after that date. Additionally, because Foster applies to all cases on direct review, Foster applies to the instant case." (Citations omitted.)
 {¶ 52} We further addressed whether Foster violates the ex post facto clause and found:
 "In the instant case, [the defendant] had notice that the sentencing range was the same at the time he committed the offenses as when he was sentenced. Foster did not judicially increase the range of his sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime, *Page 18 
nor did it create the possibility of consecutive sentences where none existed. As a result, we conclude that the remedial holding of Foster does not violate [the defendant's] due process rights or the ex post facto principles contained therein." Mallette, supra.
 {¶ 53} Likewise, in the instant case we find that the remedial holding of Foster does not violate White's due process rights or the ex post facto principles contained therein. Therefore, the fifth assignment of error is overruled.
 {¶ 54} Accordingly, the judgment of the trial court is affirmed, in part, and reversed, in part. This case is remanded to the trial court for a corrected journal entry reflecting our vacating the kidnapping convictions and sentences only.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 KENNETH A. ROCCO, J. and *Page 19 
 CHRISTINE T. McMONAGLE, J. CONCUR. *Page 1