JOURNAL ENTRY AND OPINION. *Page 3 
{¶ 1} Defendant-appellant, James Stubbs, appeals his conviction for felonious assault with a firearm specification. We affirm.
 {¶ 2} Stubbs was indicted for felonious assault with one-and three-year firearm specifications, two counts of drug possession each with a one-year firearm specification, two counts of drug trafficking each with a one-year firearm specification, and having a weapon while under disability.
 {¶ 3} The case proceeded to a jury trial. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal. The motion was granted as to the trafficking counts only. The jury found Stubbs guilty as to the remaining counts, and he was sentenced by the trial court to seven years.
 {¶ 4} The following testimony was adduced at trial. Anthony Smith, the victim, testified that he was sitting in the driver's seat of his girlfriend's van, fixing the radio, when he heard gunshots that sounded far away and behind him. Through the rearview mirror, Smith saw a man, later identified as Stubbs, walking up behind the van. Smith testified that Stubbs was about 20 feet away.
 {¶ 5} According to Smith, Stubbs was pointing at him like he was trying to get his attention. Smith then saw a flash and heard the van's back window blow out. Smith ducked down and heard another shot, which shattered the driver's side window and went through the windshield. Smith described the second shot as having missed him "by about a foot." *Page 4 
 {¶ 6} Smith described hearing about four more clicking sounds coming from by the driver side door; he testified that it sounded like a gun was jamming. Smith testified that he jumped out of the van and asked Stubbs if he was trying to kill him. During this encounter, Smith and Stubbs were about eight feet apart and Smith saw a gun in Stubbs' hand. According to Smith, Stubbs was trying to pull the trigger, but his hand was shaking and he was unable to do so. Smith then ran to a field, called 9-1-1, and continued to watch Stubbs.
 {¶ 7} Smith saw Stubbs walk down the street and heard what could have been more gunshots. Stubbs collapsed next to a red vehicle and started banging his head against the car. Smith described Stubbs as intoxicated. Smith waited on the scene until the police arrived, and identified Stubbs to the police as the man who shot at him.
 {¶ 8} According to the responding police officer, Stubbs, who he found "crumpled up" against a red vehicle, had a gun his hand and smelled of PCP.[1] The officer secured the weapon and found five spent rounds in it. Crack cocaine was found in Stubbs' pants pocket. Stubbs was transported by ambulance to the hospital, where he was treated for PCP intoxication. The medical records did not indicate any trauma or injury to Stubbs' person. After treatment, Stubbs was taken *Page 5 
by the police to jail, where a vial of PCP was discovered in his clothing. Swabs taken from Stubbs' hands tested positive for gunshot residue.
 {¶ 9} The investigating detective interviewed Stubbs. Stubbs told the detective that he was struck by a vehicle while walking down the street, and was left unconscious. The detective testified that the gun recovered from Stubbs was an operable firearm, and that his investigation revealed that five shots had been fired on the evening of the incident.
 {¶ 10} Stubbs also testified. He admitted that he has nine prior convictions involving crack and PCP. According to Stubbs, on the evening of the incident, he was on his way to a bus stop so that he could go to his mother's house. While walking, he saw a red car drive past him. According to Stubbs, the driver of the red car turned the car around and bumped it into him, hitting his leg. Stubbs lost his balance and fell down. Two men exited the car and told Stubbs not to get up and run, or they would shoot him. One of the men had a gun pointed to Stubbs' head. Stubbs and the man struggled; Stubbs bit the man's arm and was able to get the gun away.
 {¶ 11} Stubbs testified that after getting the gun, he ran down the street. As he was running he felt faint, because he had smoked crack and PCP. According to Stubbs, he was trying to uncock the gun when it accidentally went off and hit the van. He continued to run down the street when he heard tires squealing and "they" shot *Page 6 
at him. He ran until he had a panic attack and fell against a car. He denied shooting anyone.
 {¶ 12} In his sole assignment of error, Stubbs contends that the felonious assault conviction was against the manifest weight of the evidence. We disagree.
 {¶ 13} Manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credible evidence."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541. Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine,State v. Thomas (1982), 70 Ohio St.2d 79, 434 N.E.2d 1356, syllabus, when reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *." Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 14} In determining whether the decision of a trial court is against the manifest weight of the evidence, this court has promulgated the following factors as guidelines to be taken into account by the reviewing court: 1) the reviewing court is not required to accept as true the incredible; 2) whether the evidence is uncontradicted; 3) whether a witness was impeached; 4) what was not proved; 5) the *Page 7 
certainty of the evidence; 6) the reliability of the evidence; 7) whether a witness' testimony is self-serving; and 8) whether the evidence is vague, uncertain, conflicting or fragmentary. State v.Mattison (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, syllabus.
 {¶ 15} R.C. 2903.11 governs felonious assault and provides that, "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C.2903.11(A)(2).
 {¶ 16} Stubbs argues that his "version of the events is just as credible as the victim's version of the events." We disagree. After reviewing the entire record, considering the credibility of the witnesses, and considering the Mattison factors, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice that Stubbs' conviction must be reversed and a new trial ordered.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 8 
SEAN C. GALLAGHER, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] An illegal street drug that can cause hallucinations. *Page 1