JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Nelson White, was convicted by a jury of aggravated robbery for his part in a shoplifting crime at Marc's Deep Discount Store. For the reasons that follow, we affirm.
Substantive Facts and Procedural History
 {¶ 2} While Mr. White was in Marc's Discount Store on December 12, 2006, he was observed ripping open a package of lip balm and putting it into his pocket along with some facial wash. Mr. White then left the store and was followed by Marc's security.
 {¶ 3} Mr. William Gorey, a Cleveland firefighter who works part-time at Marc's as a security officer, was working security that day and confronted Mr. White. The two men engaged in a heated argument outside of the store that ended when Mr. White pushed Mr. Gorey backwards with his fists and took off running. Mr. Gorey gave chase. Mr. John Levak, who was working as an electrical contractor at Marc's, observed the altercation and joined Mr. Gorey in the chase. During the pursuit, Mr. Levak saw the merchandise fall from Mr. White's pocket.
 {¶ 4} As Mr. White attempted to climb a fence to elude capture, Mr. Gorey grabbed him, but Mr. White was able to push him away. Mr. Levak, though, was *Page 4 
able to grab Mr. White from the fence, and the three men continued to struggle. During the struggle Mr. Gorey's hand was severely injured.
 {¶ 5} The police arrived fifteen minutes later, and only after they threatened him with a taser were the officers able to arrest Mr. White.
 {¶ 6} Mr. White was indicted by the grand jury and charged with one count of aggravated robbery in violation of R.C. 2911.01, and one count of robbery in violation of R.C. 2911.02. He pled not guilty to both charges and was referred to the Cuyahoga County Psychiatric Clinic, after which Mr. White's case was placed on the criminal mental health docket.
 {¶ 7} The trial court held a pretrial hearing on August 21, 2007, at which Mr. White was represented by Mr. Randolph Howard, who was appointed after prior counsel withdrew. Discovery issues were discussed, as well as an independent psychiatric referral for Mr. White.
 {¶ 8} Another pretrial hearing was held on September 21, 2007, on Mr. White's motion to withdraw his request for an independent psychiatric evaluation, which was granted by the court. During the pretrial, Attorney Howard suggested to the trial court that Mr. White may need to represent himself, and after the hearing Attorney Howard filed a motion to withdraw as counsel. The trial court granted the motion at a hearing on October 2, 2007, and assigned Mr. Richard Agopian as new defense counsel. Although not in the *Page 5 
record, Attorney Agopian withdrew as counsel prior to the trial date of December 19, 2007, and Mr. John Luskin was appointed in his place.
 {¶ 9} After ruling on multiple pretrial motions filed by Mr. White and accepting the parties' stipulation as to the competency report of the court psychiatric clinic, a jury was impaneled and the trial began. On December 20, 2007, the jury returned a verdict of guilty on the aggravated robbery charge, [1] and the court then sentenced Mr. White to a prison term of six years. It is from this conviction that Mr. White now appeals.
Standard of Review for a Sufficiency Claim
 {¶ 10} Mr. White argues in his first assignment of error that "[t]here was insufficient evidence to support the guilty verdict for aggravated robbery, and appellant's conviction was against the manifest weight of the evidence." As Mr. White is advancing both a sufficiency of the evidence argument and a manifest weight of the evidence argument, we will first review the separate standards of review to be applied.
 {¶ 11} This court described the standard of review in a claim of insufficiency of the evidence as follows: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if *Page 6 
believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Thompson (1998),127 Ohio App.3d 511, 525, citing State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 12} "`Sufficiency' is a term of art meaning that the legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, quoting Black's Law Dictionary (6th Ed. 1990).
 {¶ 13} "In essence, sufficiency of the evidence is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id. "In addition, a conviction based on legally insufficient evidence constitutes a denial of due process." Id.
 {¶ 14} With the above standard in mind, we begin our analysis of Mr. White's sufficiency of evidence claim. Mr. White was found guilty of the crime of aggravated robbery, in violation of R.C. 2911.01(A), which states:
 " (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, *Page 7 shall do any of the following:
 "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 "(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
 "(3) Inflict, or attempt to inflict, serious physical harm on another. ***" (Emphasis added.)
 {¶ 15} R.C. 2913.01 defines "theft" as a violation of specific statutes, including R.C. 2913.02, which states:
 "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 "(1) Without the consent of the owner or person authorized to give consent;
 "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 "(3) By deception;
 "(4) By threat;
 "(5) By intimidation."
 {¶ 16} Accordingly, we examine three essential elements involved in the charge of aggravated robbery: theft, flight, and serious physical harm. *Page 8 
 {¶ 17} In regard to the theft, Mr. White made the following admission regarding the theft during a pretrial hearing, which was later repeated in the testimony of Mr. Gorey: "I only had a tube of lip gloss which I gave back to them." At trial upon cross-examination, Mr. White stated:
 "No, what happened was, like I said, I was looking for my money. I had on snow pants, and I'm thinking that it had fallen through one of my pockets on my snow pants because they don't have a seam in it. It goes straight through my pants and it can fall out the underside of it. So what happened was, instead of me putting the product on the floor with snow and ice because the aisles were full, I guess I must have slipped it in my front pocket. I forgot about it
 {¶ 18} When the question was posed whether Mr. Gorey asked him to come inside the store because Mr. Gorey thought he stole something, Mr. White replied that he was asked to check the inside of his pockets, which he did. Mr. White was then asked: "[a]nd that's when you pulled out the lip gloss, right?" To which Mr. White responded, "I guess."
 {¶ 19} Mr. Gorey further testified that he observed Mr. White acting suspiciously in the health and beauty aisle. He explained that "[t]his person had taken a lip balm, walked out of that aisle, which is kind of an open view, not many places to hide if someone's stealing ***. So this gentleman walked to the close-out aisle, which is the more congested aisle where all the sale items are. And I was standing in the aisle next to him. It was an open area, it wasn't like *Page 9 
shelving. I wasn't blocked by any view of this gentleman. He ripped open the packaging and put it in his pocket and started to go back up the aisle. I figured, okay, this gentleman took a, you know, some chapstick $2, great. We'll go outside, we'll stop him, come back in. Upon going back to the aisle, he stopped and grabbed some facial wash, some acne Neutrogena stuff, put that into a front pocket of his coat. Whatever he was wearing at the time."
 {¶ 20} Mr. Gorey testified that Mr. White walked past a closed register, did not pay for any items, and walked out of the store. Mr. Gorey also testified that from the first time he saw Mr. White in the store until he left the store, he never lost sight of Mr. White. Accordingly, the theft element was satisfied.
 {¶ 21} As for the second and third essential elements, that of flight and the infliction of serious physical harm, our review of the evidence confirms the state introduced sufficient evidence. Mr. Gorey testified that Mr. White fled after committing the theft offense. This was further corroborated by Mr. Levak.
 {¶ 22} In addition, Mr. Gorey, Mr. Levak, and Cleveland Police Officer Robert Klomfas testified about the struggle that ensued after Mr. White attempted to climb over a fence to escape. As a result of this struggle, Mr. Gorey suffered a hairline fracture and ripped tendon in his finger necessitating two surgeries. Mr. Gorey testified that he was "positive" that the injuries occurred during the struggle with Mr. White. He explained that "during the wrestling I *Page 10 
jammed my right ring finger." The jury was also provided with Mr. Gorey's medical record documenting the nature and extent of the injuries. This record was a stipulated exhibit.
 {¶ 23} Accordingly, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that both the flight and the serious physical harm elements contained in the aggravated robbery charge were proven beyond a reasonable doubt.
Standard of Review for a Manifest Weight Claim
 {¶ 24} "Although an appellate court may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." Thompkins at 387.
 {¶ 25} "Manifest weight of the evidence raises a factual issue and involves `the inclination of the greater amount of credible evidence.'"State v. Stubbs, Cuyahoga App. No. 89883, 2008-Ohio-1930, ¶ 13, citingThompkins at 387.
 {¶ 26} "Weight is not a question of mathematics, but depends on its effect in inducing belief." State v. White, Cuyahoga App. No. 88491,2007-Ohio-3080, ¶ 23, quoting Thompkins. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the *Page 11 
evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact-finder's resolution of the conflicting testimony."Thompkins at 387.
 {¶ 27} Thus, when considering a claim that a judgment is against the manifest weight of the evidence, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. See, also, e.g., State v.Quinones, Cuyahoga App. No. 87517, 2007-Ohio-70. The weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230.
 {¶ 28} Applying this standard of review, we determine that the record demonstrates that the aggravated robbery verdict is not against the manifest weight of the evidence. Mr. Gorey testified that he had worked security at Marc's for eight years catching hundreds of shoplifters. He testified that he followed a specific procedure for surveillance and confirmation of theft offenses. Mr. White's contentions that he paid for some merchandise; that the items in *Page 12 
question found their way into his pockets by mistake; that he refused to go back into the store out of fear; that he patiently waited for twenty minutes for the police to arrive; and that when they did not arrive, he walked away, are simply incredible. Mr. Levak and the police officer at the scene confirm the testimony of Mr. Gorey.
 {¶ 29} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot conclude that the jury in this case, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that Mr. White's conviction of aggravated robbery must be reversed.
 {¶ 30} Thus, we determine that not only did the state carry its burden of proof and introduce sufficient evidence on each and every element of the offense, but Mr. White's conviction is not against the manifest weight of the evidence.
 {¶ 31} Mr. White's first assignment of error is without merit.
Ineffective Assistance of Counsel
 {¶ 32} Mr. White argues in his second assignment of error that he "received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution." Specifically, he argues that his trial counsel was deficient in three areas: (1) the amount of preparation time before trial; (2) allowing him to *Page 13 
assist in his own defense; and (3) failing to file a motion to suppress or motion in limine, to prevent the state from introducing an admission made during a previous pretrial hearing in open court while he was not under oath.
 {¶ 33} In reviewing an ineffective assistance of counsel claim, the benchmark is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington (1984),466 U.S. 668, 686. To successfully assert ineffective assistance of counsel, one must show that the defense attorney made errors so serious that he or she was not functioning as "counsel" as guaranteed by theSixth Amendment and that he or she was prejudiced by the deficient performance. In other words, Mr. White must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Further, we are to presume that counsel's conduct was competent. Id. See, also, State v. Bradley (1989),42 Ohio St.3d 136, 143.
 {¶ 34} In order to satisfy the Strickland test, we need not address the first prong (regarding the deficiency of counsel's performance) "[i]f it is easier to dispose of an ineffectiveness claim on the ground of sufficient prejudice ***." Strickland at 697. *Page 14 
 {¶ 35} This court has held that in order to prevail on a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v.Ford, Cuyahoga App. Nos. 88946 and 88947, 2007-Ohio-5722, ¶ 9, citingStrickland at 687, Bradley at 143. We have also held that the failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial. Id., citingState v. Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372.
 {¶ 36} Applying these principles to the instant case, Mr. White has failed to show that he was prejudiced by trial counsel's actions.
Trial Preparation and New Counsel
 {¶ 37} Mr. White argues that he was prejudiced because his counsel was assigned less than two months before trial, his counsel did not accumulate the necessary evidence to aid in his defense, and he repeatedly asked for another attorney.
 {¶ 38} The evidence, however, demonstrates that this was not Mr. White's first request for assigned counsel. Trial counsel was actually his fourth assigned attorney in this case. Each attorney requested discovery and the state responded to each of those requests. In addition, Mr. White filed numerous pretrial motions on his own behalf prior to trial. *Page 15 Motion in Limine
 {¶ 39} Mr. White argues that counsel erred in failing to file a motion to prevent the state from introducing an admission made in open court during a pretrial hearing while he was not under oath.
 {¶ 40} Mr. White made this admission to the theft of the lip gloss from Marc's on the morning of trial. Counsel was therefore unable to prepare a motion in limine or a motion to suppress prior to the commencement of trial that same afternoon.
 {¶ 41} The issue, however, was still discussed in open court the next day, and defense counsel did object to the introduction of the statement. The fact that Mr. White was not under oath when the statement was made is unimportant. It was a voluntary statement made in open court while he was not being questioned or interrogated by any law enforcement officer.
 {¶ 42} "Typically, the decision not to file a motion to suppress or other pretrial motion does not constitute ineffective assistance of counsel `when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant.'"State v. Meyers, Summit App. Nos. 23864 and 23903, 2008-Ohio-2528, ¶ 67, quoting State v. Nields (2001), 93 Ohio St.3d 6, 34. *Page 16 
 {¶ 43} Moreover, even if trial counsel had filed a motion to suppress or motion in limine to prevent the state from introducing the admission, Mr. White failed to prove that the outcome of the trial would have been any different. In fact, had trial counsel filed the motion to suppress or motion in limine, it is unlikely that the court would have granted it. Under these circumstances, Mr. White cannot prove prejudice.
Psychiatric Records
 {¶ 44} Mr. White further argues that defense counsel allowed his psychiatric records to be introduced to the jury without objection. Psychiatric records, however, were not introduced to the jury or offered into evidence in this case. There was a competency evaluation which was marked as a court's exhibit. But it was never discussed with the jury, shown to the jury or submitted to the jury. In fact, the trial court noted on at least two different occasions that the report would not go to the jury, and the trial court did not allow the introduction of the complete pretrial hearing transcript, which contained a discussion of Mr. White's mental health status.
 {¶ 45} We find no deficiency on the part of trial counsel, and thus Mr. White's second assignment of error is overruled.
 {¶ 46} Accordingly, the judgment of the Cuyahoga County Court of Common Pleas is affirmed. *Page 17 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR
[1] The trial court nolled the robbery charge prior to the commencement of trial. *Page 1